Estate of Frank N. Derby, Deceased, The United States National Bank of Portland (Oregon), Trustee, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 36138. Promulgated April 24, 1953.

*Dean H. Dickinson, Esq.,* for the petitioner.
*Douglas L. Barnes, Esq.,* for the respondent.

JOHNSON, *Judge:* The six parcels of real property involved in the first issue, the value of which is not in dispute, were acquired by the decedent and his wife as tenants by the entirety. The petitioner concedes that inasmuch as the surviving spouse contributed nothing to the purchase of the property, the full value thereof would have been includible in decedent's gross estate if the tenancy had not been previously severed. It contends here that the effect of the conveyance to the trustee and the trust declared on the property was to convert, by the joint action of the owners, the entirety estates into tenancies in common, with the result that the decedent died seized of no more than a one-half interest in the property as a tenant in common. It asserts that no greater interest passed for taxation under section 811 (d) or (e). The broad contention of the respondent is that the declaration was a passive trust for testamentary disposition of property and did not serve for estate tax purposes to sever the estates by the entirety. The parties are in agreement that the interest of the decedent in the property at the time of his death is controlled by the laws of Oregon.

To establish severances of the tenancies by the entirety in favor of tenancies in common, petitioner relies upon the deeds to the trustee and the declaration of trust. The deeds to the trustee for the original five parcels were absolute in form and did not designate it as trustee of the property. The trustors made a declaration in the trust instrument that "at the time of said conveyance each of them was the owner of an undivided half interest in and to the real property." Petitioner

asserts that the declaration of ownership in the instrument "indicates" a prior mutual agreement to convert the entirety estates into tenancies in common. There was no prior recorded conveyance of the property and there is no evidence of a written agreement previously entered into between the spouses for the severance of the estates into tenancies in common, or otherwise. Petitioner cites no decision of Oregon courts recognizing a right to sever a tenancy by the entirety by an oral agreement, and we find none. A provision in section 63–210, Oregon Compiled Laws Annotated, that "a conveyance from husband or wife to the other of their interest in an estate held by them in entirety shall be valid and dissolve the estate by entirety," indicates that an oral agreement between the spouses for conversion of their entirety interests into tenancies in common would not be effective. The real intent of the parties was to change the character of the estates without payment of consideration to reduce estate tax liability of decedent and make a testamentary disposition of the property.

The trust agreement did not diminish the right of control of the trustors or their economic interest in the corpus during their joint lives, for they reserved exclusive power to operate the property, collect the income therefrom, and amend or revoke the instrument. The reserved powers were exercised and to the extent of withdrawing real property by deeds to themselves as husband and wife, which created entirety interests in the property. *Noblitt* v. *Beebe*, 23 Or. 4, 35 P. 248; *Marchand* v. *Marchand*, 137 Or. 444, 3 P. 2d 128.

The trustee did not receive more than bare legal title to the property and power to manage and operate the corpus was not conferred upon it during the lifetime of decedent. The evidence does not establish that the declaration of trust was recorded.

In *Coston* v. *Portland Trust Co.*, 131 Or. 7, 278 P. 586, the wife executed deeds conveying real property to a trustee with the provision that the instrument not be placed of record and a reservation of power to control the property and collect the income therefrom. The trust instrument was never recorded. Later the husband executed quit-claim deeds covering most of the property placed in trust. The court held that the instrument created an express passive trust; that the estate of the trust was liable for debts of the trustor created before and after the conveyance; that the trust instrument was no more than a testamentary disposition of property, and that no part of the trust estate passed to beneficiaries other than the trustor during the latter's life. A like situation prevails here.

In *Estate of William Macpherson Hornor*, 44 B. T. A. 1136, the decedent conveyed to himself and his wife as tenants by the entirety parcels of real property in Pennsylvania which he had inherited and purchased. The wife made no contribution to the cost of the properties and paid nothing to her husband for the entirety interest she

acquired from him. In 1935 they conveyed the properties to themselves and another individual as trustees to manage and operate the property and distribute the net income jointly to the trustors, and upon the death of one to the other for life. Provision was made in the instrument for distribution of income after the death of the surviving settlor and of the corpus after death of the survivor of the income beneficiaries. The settlors reserved joint power of revocation and modification. Upon the death of either settlor the trust was irrevocable.

There, as here, the taxpayer sought to prevent the imposition of estate tax on entirety estates because of the intervening trust. In holding that the value of the property was includible in gross estate under section 302 (e) of the Revenue Act of 1926, corresponding to section 811 (e) of the Code, we said:

But, other than the creation of a purely legalistic title in the spouses and their son as trustees instead of the spouses alone as owners, the trust, for present purposes, accomplished nothing. Until the first decedent died, it was revocable; and until both settlors died, the income was distributable to them. These reservations deprived the trust of substance sufficient to withhold it from the gross estate. A trust created by joint tenants or tenants by the entirety has no greater force to keep the property from the gross estate of one of the settlors than would a similar trust created by an individual. Revocability and reservation of income for life leave the property in the settlor's gross estate as effectively in one case as in the other. Property held in a revocable trust is within the gross estate, *Porter* v. *Commissioner*, 288 U. S. 436; *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *Chase National Bank* v. *United States*, 278 U. S. 327. So is property of which the decedent has a possibility of reversion, *Helvering* v. *Hallock*, 309 U. S. 106.

On appeal the decision was affirmed upon the ground that the transfer to the trustees was "squarely within the provisions of Section 302 (e)." 130 F. 2d 649.

Petitioner seeks to distinguish the *Hornor* case upon the ground that no conveyance of title was made because the grantors transferred the property to themselves and that the avails were held as tenants by the entirety. The property was, in fact, conveyed to themselves and another individual as trustees and the trust instrument provided for distribution of the net income jointly to the settlors. In Pennsylvania either spouse may rent real property held as tenants by the entirety without an accounting to the other. *Wakefield* v. *Wakefield*, 149 Pa. Super. 9, 25 A. 2d 841; *Lohmiller* v. *Gotwals*, 150 Pa. Super. 539, 29 A. 2d 206.

The petitioner cites *Sullivan's Estate* v. *Commissioner*, 175 F. 2d 657, in connection with its discussion of the creation of tenancies in common out of the entirety estates but makes no contention that it controls the answer here. That case arose in California and involved the application of section 811 (c) to the conversion of joint estates into tenancies in common. The court held that the conversion was

bona fide for money's worth and recognized that the factual situation differed from the *Hornor* case.

Accordingly, we hold that respondent did not err in including the full value of the property in gross estate under the provisions of section 811 (e).

The decedent died January 26, 1945, and the estate tax return was due April 26, 1946. Sec. 821 (b), I. R. C.; Regs. 105, sec. 81.63. There was no administration of the estate. The return was filed by petitioner on August 9, 1948. The respondent imposed a delinquency penalty of 25 per cent of the tax because of the failure to file a return within the prescribed time. The difference between the parties on the penalty question is whether the failure to file a timely return "was due to a reasonable cause and not to willful neglect." Section 3612 (d) (1).

Petitioner asserts that its failure to file a timely return resulted from oversight due to alleged administrative difficulties in its trust department because of the absence in the war of Alton, the trust officer, and some of the young men employed in the department, and the death in July 1945 of Pierce, who took over the work of Alton during his military service.

The trust officer returned to duty in April 1945 and hostilities in the war ended in August 1945, both of which dates are well within the time allowed for filing. Assuming that the reason assigned could be regarded as reasonable, there is no proof that the administrative problem was not completely remedied soon enough after the return of Alton for the filing of a timely return. It was ascertained after the death of the wife on July 14, 1947, that no return had been made, yet almost 13 months elapsed before the return was filed.

The petitioner is a banking institution operating a trust department for the administration of estates. As such it is presumed to know when estate tax returns should be filed and its customary practice was to file estate tax returns promptly. *Estate of Charles Curie*, 4 T. C. 1175, 1185. An examination of its records, before being prompted by the death of the wife two and one-half years after decedent died, would have revealed that no return was filed and shown the fallacy of any assumption Alton might have had that arrangements had been made to have a timely return filed by a personal representative of the estate. There was no administration of the estate, and it does not appear that petitioner endeavored to ascertain the fact until after the death of decedent's wife.

Petitioner, in our opionion, has failed to establish that there was reasonable cause for the delinquency and that it was not due to willful neglect.

*Decision will be entered for the respondent.*