Richard H. BLACK, deceased, Phyllis M. Black, Personal Representative, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 84–7491.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1985.

Decided July 9, 1985.

Stephen S. Case, Sun City, Ariz., for petitioner-appellant.

Jonathan S. Cohen, Washington, D.C., for respondent-appellee.

Before SNEED, TANG and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Petitioner Phyllis Black, personal representative of the estate of Richard Black,

appeals from a judgment of the United States Tax Court finding an estate tax deficiency of $39,666.00. The issue is whether the entire value of assets formerly held in joint tenancy by the decedent and his spouse, less the contribution of the surviving spouse, should be included in the gross estate under I.R.C. § 2040, even though the assets were transferred shortly before the decedent's death into a revocable trust that modified the surviving spouse's right of survivorship.[1] We hold that the creation of the trust severed the joint tenancy and placed the surviving spouse's share of the trust assets beyond the reach of section 2040. To that extent we reverse the Tax Court judgment.

The Blacks lived in Sun City, Arizona at all times relevant to this action. Among their assets they held a number of securities as joint tenants.

On June 10, 1977, Mr. and Mrs. Black created the Black Revocable Trust. The trust agreement named the Blacks as trustees. Under the agreement, the trust corpus consisted of "all property listed in Schedule A, Husband's Separate Property and Schedule B, Wife's Separate Property, attached to this agreement...." During their joint lives, the Blacks retained unrestricted rights to all trust principal and income. They also reserved a joint power to amend or revoke the trust.[2]

The trust agreement provided that, upon the death of the first spouse to die, the trust assets would be divided into two separate trusts, the "Survivor's Trust" and the "Decedent's Trust." The agreement allo-

cated to the Survivor's Trust the "Surviving Trustor's separate property and the Surviving Trustor's interest in community property," plus the amount necessary to obtain the maximum marital deduction. The remainder of the assets was allocated to the Decedent's Trust.

With respect to the Survivor's Trust, the surviving spouse was given an unfettered right to all principal and income, and a general power of appointment. She also could amend or revoke the trust. With respect to the Decedent's Trust, however, the surviving spouse had fewer rights. The surviving spouse and the Black's daughter, Dorothy Gayle Standish, were co-beneficiaries entitled to discretionary distributions of principal and income. The trust agreement provided that the trustee "shall consider the respective needs of the beneficiaries" in determining whether to make distributions from the Decedent's Trust, and limited the power to invade principal to those amounts necessary for the health, education, and reasonable support of the beneficiaries. Although the agreement designated the surviving spouse as trustee, it prohibited her from "participat(ing) in any decision to invade principal for ... her benefit." The decision to invade principal was vested in a co-trustee or successor trustee other than the surviving trustor. The surviving spouse had a special power of appointment over the remaining principal and accumulated income.

Four days after the creation of the Black Revocable Trust, the Blacks took their

---

1. Section 2040 states in relevant part that "the value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants with right of survivorship by the decedent and any other person...." 26 U.S.C. § 2040.

Neither party suggests that section 2040(b) applies in this case. Section 2040(b) was adopted in 1976 to provide that one-half of the value of a "qualified joint interest" held by a husband and wife is includable in the gross estate of the first spouse to die. Tax Reform Act of 1976, Pub.L. No. 94–455, § 2002(c)(3), 90 Stat. 1520, 1855 (1976). Section 2040(b) does not apply, however, to joint interests created before 1977. § 2002(d)(3), *id.* at 1856.

2. The tax court held that revocation would have revived the joint tenancy. The taxpayer argues that, under the trust agreement, the assets would have remained "separate" following a revocation because the severance of the joint tenancy property into two lumps of separate property preceded the creation of the trust. The tax court rejected that argument. For purposes of discussion we will assume that the tax court correctly interpreted the trust agreement, because we do not believe that section 2040 applies here even if revocation would have resulted in the resumption of joint tenancy ownership.

jointly held securities to a bank and had the securities reissued to them as trustees. On the same day, they executed the two schedules to which the trust agreement referred, entitled "Schedule 'A'—Husband's Separate Property" and "Schedule 'B'—Wife's Separate Property." Each of the two schedules listed approximately half of the jointly owned securities. On Schedule A, the Blacks in their capacity as trustees acknowledged the receipt of "the above described assets of RICHARD H. BLACK." On Schedule B, the Blacks in their capacity as trustees acknowledged the receipt of "the above described assets of PHYLLIS M. BLACK."

Mr. Black died on August 2, 1977. On that date, the trust contained the securities listed on Schedule A and Schedule B without any additions or subtractions. On the estate tax return filed on Mr. Black's behalf, Schedule G—"Transfers During Decedent's Life"—included only the assets listed on Schedule A of the Black Revocable Trust as Mr. Black's separate property. The assets listed on Schedule B as Mrs. Black's separate property were not reported on the return. In his notice of deficiency, the Commissioner determined that the Blacks held both the Schedule A assets and the Schedule B assets as joint tenants on the date of Mr. Black's death. Accordingly, he included the entire value of the trust assets, less the contribution of the surviving spouse, in the gross estate pursuant to I.R.C. § 2040.

Claiming that the securities listed on Schedule B should not have been included in the gross estate, the estate petitioned the tax court for a redetermination of the deficiency. The tax court affirmed the Commissioner's decision. The tax court focused on the fact that the Blacks had transferred their jointly held securities to a revocable trust in which, during their joint lives, they retained unrestricted dominion over principal and income. T.C. Memo No. 1984-136, slip op. at 17 (Mar. 23, 1984). The court further noted that the surviving spouse, Mrs. Black, retained unfettered control over the assets in the Survivor's Trust even after her husband's death. *Id.*

at 15. In light of these facts, the court concluded that the transfer of the securities to the trust "was ineffective, for Federal estate tax purposes, to sever the joint tenancy." *Id.* at 17. Nowhere did the court refer to general common-law joint tenancy principles or the Arizona law of joint tenancy. Instead the court relied on a line of tax cases which holds that section 2040 includes in the gross estate the entire value of joint tenancy property placed in a revocable trust. *Estate of May v. Commissioner*, 37 T.C.M. 137 (1978); *Estate of Derby v. Commissioner*, 20 T.C. 164 (1953); *Estate of Hornor v. Commissioner*, 44 B.T.A. 1136 (1941), *aff'd* 130 F.2d 649 (3d Cir.1942).

■ When we interpret the tax code, our inquiry focuses on whether Congress intended to impose a tax on a particular property right or interest. *United States v. Pelzer*, 312 U.S. 399, 402–03, 61 S.Ct. 659, 660–61, 85 L.Ed. 913 (1941); *Morgan v. Commissioner*, 309 U.S. 78, 80, 60 S.Ct. 424, 425, 84 L.Ed. 1035 (1940). Here we must interpret section 2040 to determine whether the assets held by Mr. and Mrs. Black in the Black Revocable Trust constitute "interest(s) ... held as joint tenants with right of survivorship by the decedent and any other person." State law—in this instance the law of Arizona—defines the powers that the Blacks could exercise over the trust property. Arizona law, however, does not control our ultimate determination. If the statutory language expresses a Congressional purpose to tax the decedent's interest, that interest is includable in the decedent's gross estate regardless of whether state law would label it a "joint tenancy" interest. *Morgan*, 309 U.S. at 81, 60 S.Ct. at 426.

Although Arizona law does not tell us what Congress meant in referring to joint tenancy, general joint tenancy principles guide our interpretation of the statutory language. "Where Congress uses terms that have accumulated a settled meaning under either equity or the common law, a court must infer, unless the statute other-

wise dictates, that Congress means to incorporate the established meaning of these terms." *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981). The common law has firmly established the meaning of the term "joint tenants with right of survivorship." Among the rules defining the term are those which determine how a joint tenancy is severed or destroyed. Those rules are the same in Arizona as elsewhere. We believe that the tax court erred when it construed section 2040 in contradiction of those rules.

■ The common law governing severance of joint tenancies is relatively simple. Joint tenants can end a joint tenancy by express agreement. They can also sever the estate by implication if they enter into a contract the terms of which are inconsistent with the continued existence of the joint tenacy. Since the distinguishing feature of a joint tenancy is the right of survivorship, a contract which modifies the right of survivorship severs the joint tenancy relationship. *In re Estate of Estelle*, 122 Ariz. 109, 111–113, 593 P.2d 663, 665–667 (1979); *Wardlow v. Pozzi*, 170 Cal. App.2d 208, 210, 338 P.2d 564, 565 (1959). *See generally* W. Burby, Real Property § 94, at 220 (3d ed. 1965).

■ According to these rules, the creation of the Black Revocable Trust severed the joint tenancy in the trust assets. Arguably the express terms of the trust agreement were sufficient to destroy the joint tenancy, since the Blacks listed the securities that they contributed to the trust as their respective separate property. But even if the Blacks did not sever their joint tenancy holdings merely by dividing them and labeling them "separate," they clearly did so by mutually agreeing to alter the right of survivorship. Under the trust agreement, the surviving spouse shares with her daughter the income interest in the one-half of the securities allocated to the Decedent's Trust. She may not invade the principal of the Decedent's Trust except at the discretion of an independent trustee. Upon her death, she may exercise

only a special power of appointment over the remaining trust principal and accumulated income. These provisions substantially diminish the undisputed right of ownership that the surviving spouse would otherwise have acquired at the death of her husband. By including them in the trust agreement, the Blacks created a property interest that the common law would not characterize as a joint tenancy.

The Commissioner suggests that the decedent's interest in the trust assets so closely resembled a joint tenancy that Congress must have intended to tax it as if it were in fact a joint tenancy. But we have previously rejected the notion that Congress intended section 2040 to apply where joint tenants have severed a joint tenancy under state law and taken the property in another form of joint ownership. In *Sullivan's Estate v. Commissioner*, 175 F.2d 657 (9th Cir.1949), two joint tenants had agreed to terminate their joint tenancy ownership and to hold their property as tenants in common. Even though each co-owner retained substantial rights in the property, including unlimited lifetime rights of management and control and the undisputed right to direct the disposition of half of the property at death, we summarily rejected the idea that the predecessor of section 2040 justified the inclusion of the entire value of the property in a co-owner's gross estate. We reasoned that "the joint tenancy was terminated (by the agreement to sever) before the husband's death. Hence, as to the joint tenancy, the deceased had no 'interest therein * * * at the time of his death.'" *Id.* at 660.

*Sullivan* applied the established rules of joint tenancy severance even though Congress had specifically provided that an analogous transfer of an outright ownership interest would not have removed the transferred property from the decedent's gross estate. The decedent in *Sullivan* terminated the joint tenancy in contemplation of his death. *Id.* At that time, the gross estate included property "to the extent of any interest therein of which the decedent has at any time made a transfer"

in contemplation of death.[3] But we refused to hold that the severance of the joint tenancy constituted a taxable "transfer," even though the effect of the severance was to reduce the decedent's estate at his death by one-half of the value of the property. We stated that "(t)here was no compulsion on the co-tenants to continue the joint tenancy so that (a) taxable event would occur." *Id.* at 659.

Other federal appellate courts have similarly declined to hold that Congress intended to create a federal concept of joint tenancy where a decedent has severed a joint tenancy and acquired a different property interest with similar characteristics. In *United States v. Glaser,* 306 F.2d 57 (7th Cir.1962), the decedent and his wife, who owned real property as tenants by the entirety, conveyed various parcels of the property to their children, reserving for themselves a joint life estate with right of survivorship. The Commissioner argued that I.R.C. § 2036(a)(1), which includes in the gross estate the value of any property which the decedent has transferred with a retained life estate in the income, should have been read together with section 2040 to include the entire value of the conveyed property in the decedent's estate. Much as in the present case, the Commissioner contended "although *in form* the conveyances destroyed the tenancies by the entireties, leaving decedent with a joint life interest and a contingent life interest if he survived his wife, *in substance* decedent retained the same interest for federal estate tax purposes that he had before the conveyance...." *Id.* at 60 (emphasis in original). The Seventh Circuit did not accept that reasoning. It held that section 2040 did not apply because the decedent and his spouse had not held the property jointly at the time of his death, and that section 2036(a)(1) did not apply because the dece-

dent could not have "transferred" the one-half interest in the property that he did not own. Accordingly, the court concluded that the conveyance resulted in the exclusion of one-half of the value of the property from the gross estate. The Sixth Circuit followed *Glaser* in *United States v. Heasty,* 370 F.2d 525 (6th Cir.1966).

The Commissioner argues that the *Sullivan* line of cases should be distinguished on the ground that none of them involved a revocable trust like the one that the decedent here established. The Commissioner contends, and the tax court held, that the revocation clause in the trust agreement makes the trust assets includable under section 2040. *Hornor's Estate v. Commissioner,* 44 B.T.A. 1136 (1941), *aff'd* 130 F.2d 649 (3d Cir.1942), and *Estate of Derby v. Commissioner,* 20 T.C. 164 (1953), support that position. In *Hornor,* the decedent and his wife owned a large number of parcels of land as tenants by the entirety. The spouses conveyed their jointly held property to a trust, naming themselves and their son as trustees. The trust provided that the co-owners would manage the property as an investment and pay the net income to the spouses "jointly" during their joint lives and then to the survivor. The spouses retained a joint power of revocation, but the trust became irrevocable upon the death of either spouse. A distribution of property among the couple's beneficiaries, upon the death of the surviving spouse, was specified in the trust agreement. The Tax Court held that the entire value of the trust property was includable in the decedent's gross estate, even though his wife survived him. On appeal, the Third Circuit affirmed on the ground that "the transfer to the trustees ... was squarely within the provisions of [the predecessor of § 2040]," without further

---

**3.** In its current version, the Code provides that the gross estate shall include all property transferred within three years of the decedent's death that otherwise would have been includable in the gross estate. 26 U.S.C. § 2035. With respect to decedents dying after December 31, 1981, § 2035 no longer creates an issue of includability. § 2035(d) now provides that trans-

fers of property otherwise includable in the gross estate, made within three years of the decedent's death, result in inclusion of the transferred assets in the gross estate only when the asset would have been includable under §§ 2036, 2037, 2038 or 2042. Thus it is now clear that § 2035 does not apply to a transfer of § 2040 joint tenancy property.

explanation. 130 F.2d at 651. *Derby* followed *Hornor* on very similar facts.

Neither the logic of the Commissioner's position nor the above authority on which he relies is persuasive. In the first place, if "revocability" distinguished taxable transfers of joint tenancy property from non-taxable ones, section 2040 would apply whenever joint tenants sever their joint tenancy and take a tenancy in common or some other form of joint ownership.[4] Owners of jointly held property can always change the form of ownership of the property by agreement among themselves. *See Kleeman v. Sheridan*, 75 Ariz. 311, 256 P.2d 553 (1953). Thus former joint tenants who hold as tenants in common can "revoke" the severance at any time and resume the joint tenancy. In light of *Sullivan*, we cannot read the statute so broadly that it would tax this kind of "revocable" tenancy in common.[5]

Furthermore, the Board of Tax Appeals in *Hornor*, in reaching the conclusion that a revocable transfer of joint tenancy property does not remove the transferred property from the gross estate, used reasoning that *Sullivan* subsequently rejected. Under I.R.C. § 2038, the gross estate includes the value of property "to the extent of any interest therein of which the decedent has at any time made a (revocable) transfer." 26 U.S.C. § 2038. *Hornor* permits the government to disregard a revocable transfer of joint tenancy property to a trust

because section 2038 would prevent an individual property owner from avoiding the estate tax by making a similar transfer.[6] *Sullivan*, however, does not allow the government to ignore the severance of a joint tenancy on the ground that the decedent accomplished the severance in contemplation of his death. Similarly, *Heasty* holds that the government may not tax the entire value of transferred joint tenancy property even though the transferor retains a life estate in the property. We would create a square conflict with those precedents were we to hold that a revocable transfer of joint tenancy property does not sever the joint tenancy for purposes of federal tax law, and that section 2040 therefore includes the entire value of the property in the gross estate.

■ We conclude that the trust agreement, as given effect by Arizona law, placed severe limits on the right of the surviving spouse to exercise control over the trust property. This modification of the right of survivorship, which the common law regards as a severance of the joint tenancy, removed the trust property from the reach of section 2040, for the Blacks did not hold the property as "joint tenants with right of survivorship" within the meaning of that statute. The Tax Court therefore erred in including the entire property, minus the survivor's contributions, in the decedent's estate. Only the decedent's

---

**4.** We speak here only of transfers which are "revocable" by the transferors jointly during their joint lives. We do not decide a case in which the trust agreement provides that the surviving spouse may revoke the trust after her husband's death, or that the surviving spouse may receive unlimited distributions of principal and interest without regard to the interests of the remaindermen. In such cases, the surviving spouse arguably retains a right of survivorship even though her interest may not be labeled as such. *See Estate of May v. Commissioner*, 37 T.C.M. 137 (1978).

**5.** We also doubt that the Commissioner would advocate such a broad interpretation. Under the current tax regulations, Section 2040 clearly does not apply to tenancies in common. 26 CFR § 20.2040-1(b).

**6.** The Board of Tax Appeals reasoned that ... other than the creation of a purely legalistic title in the spouses and their son as trustees instead of the spouses alone as owners, the trust, for present purposes, accomplished nothing. Until the first decedent died, it was revocable; and until both settlors died, the income was distributable to them. These reservations deprived the trust of substance sufficient to withhold it from the gross estate. *A trust created by joint tenants or tenants by the entirety has no greater force to keep the property from the gross estate of one of the settlors than would a similar trust created by an individual. Revocability and reservation of income for life leave the property in the settlor's gross estate as effectively in one case as in the other.*
*Hornor*, 44 B.T.A. at —— (emphasis added).

interest under the trust agreement should have been included.

REVERSED.