2019 IL App (4th) 180655

FILED
October 16, 2019
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| GLENDA J. BAILLIE, as Executor for the Estate of John F. Baillie, Deceased, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) | Ford County |
| v. | ) | No. 15P26 |
| KWAME RAOUL, in His Official Capacity as | ) | |
| Attorney General of the State of Illinois, and | ) | |
| MICHAEL W. FRERICHS, in His Official Capacity as | ) | Honorable |
| Treasurer of the State of Illinois, | ) | Matthew John Fitton, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court, with opinion.
Presiding Justice Holder White and Justice Harris concurred in the judgment and
opinion.

**OPINION**

¶ 1        This is an action pursuant to the State Officers and Employees Money Disposition

Act (30 ILCS 230/1 to 6a (West 2014)), which allows taxpayers to voluntarily pay taxes under

protest and then sue the government for a refund. The tax in question here is the Illinois estate tax.

The estate is that of the late John F. Baillie. Plaintiff, Glenda J. Baillie, is his surviving spouse and

personal representative. (We will refer to the Baillies by their first names, as Glenda does in her

brief.) Defendants are Kwame Raoul, the Attorney General of Illinois, and Michael E. Frerichs,

the Treasurer of Illinois. (We will refer to them collectively as "the State.")

¶ 2        The parties disagree on how John's one-half shares in three joint tenancy parcels

should be valued. The answer, according to the State, is in subsection (b)(1) of section 2040 of the

Internal Revenue Code (26 U.S.C. § 2040(b)(1) (2012)): Each of the joint tenancy parcels, the State argues, was a qualified joint interest within the meaning of that subsection, and subsection (b)(1) (*id.* § 2040(b)(1)) says simply to divide the fair market value of a qualified joint interest by two.

¶ 3        Glenda points out, however, that because she made a qualified disclaimer of her survivorship interests in the three joint tenancy parcels (see 755 ILCS 5/2-7 (West 2014); 26 U.S.C. § 2518 (2012)), the probate court did not treat the three parcels as joint tenancy property. Instead, John's one-half shares in those parcels (that is to say, Glenda's disclaimed survivorship interests) passed into John's probate estate and, in turn, to their daughters. Consequently, Glenda argues, instead of being valued under section 2040(b)(1) (26 U.S.C. § 2040(b)(1) (2012)), *i.e.*, 50% of the fair market value of the joint tenancy parcel, the disclaimed one-half shares should be given their fair market value under section 2033 of the Internal Revenue Code (*id.* § 2033), which allows a fractional interest discount, a reduction in value to account for the necessity of accommodating cotenants.

¶ 4        The circuit court of Ford County upheld the State's disallowance of fractional interest discounts for the disclaimed shares in the joint tenancy parcels because the court was unconvinced that Glenda's qualified disclaimers had taken those parcels out of section 2040(b)(2)(B) (*id.* § 2040(b)(2)(B)). The joint tenancy parcels, the court concluded, still met that section's definition of a qualified joint interest, and fair market value divided by two was how a decedent's share of a qualified joint interest had to be valued (*id.* § 2040(b)(1)). So, the court denied Glenda's motion for summary judgment and granted the State's motion for summary judgment. Glenda appeals.

¶ 5        In our *de novo* review (see *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 18), we likewise conclude that, despite Glenda's qualified disclaimer of her survivorship interests in the three joint tenancy parcels, the conditions for using the valuation methodology in section 2040(b)(1) (26 U.S.C. § 2040(b)(1) (2012)) remain fulfilled: Until John's death, he and Glenda alone, as a married couple, held the three parcels in joint tenancy with right of survivorship (see *id.* § 2040(b)(2)(B)). Glenda's disclaimer of the survivorship interests did not change that. Therefore, we affirm the judgment.

¶ 6                                I. BACKGROUND

¶ 7        John died on April 29, 2015. In his will, he gave his estate to Glenda and, in the event she predeceased him, to their daughters, Johneen L. Davis and Suzanne M. Bargmann.

¶ 8        Until John's death, he and Glenda owned farmland in Ford County: five parcels as tenants in common and three parcels as joint tenants with right of survivorship. (The joint tenancy parcels have tax identification Nos. 04-04-06-200-004, 04-04-08-100-001, 04-04-08-100-002, 04-04-08-100-003, and 03-03-21-300-001.)

¶ 9        On October 28, 2015, Glenda made a qualified disclaimer of all of John's interest in real estate, including her survivorship interests (John's one-half shares) in the three joint tenancy parcels. Consequently, John's one-half shares in the joint tenancy parcels entered his probate estate and were distributed to Davis and Bargmann, as if Glenda had predeceased John.

¶ 10        As John's personal representative, Glenda obtained appraisals of the farmland so she could prepare estate tax returns. The appraisals applied a 20% fractional interest discount to John's one-half shares in the tenancies in common and the same discount to his one-half shares in the joint tenancies. Glenda filled out the federal and Illinois estate tax returns accordingly and filed them.

¶ 11　　　　The Attorney General agreed to the 20% fractional interest discount for John's one-half shares in the tenancies in common, but on the authority of sections 2040(b)(1) and (b)(2)(B) (*id.* § 2040(b)(1), (b)(2)(B)), he rejected any fractional interest discount for John's one-half shares in the joint tenancies. As a result, in his adjustment to the tentative taxable estate, the Attorney General imposed an additional Illinois estate tax, with interest.

¶ 12　　　　In compliance with the Attorney General's demand, Glenda, as the personal representative, paid an additional $120,108 into the state treasury, but she made the payment under protest and brought this action. On her motion, the circuit court ordered the retention of the payment in the protest fund, pending resolution of this case.

¶ 13　　　　The parties filed cross-motions for summary judgment. In arguments on those motions, Glenda's attorney represented to the circuit court that the Internal Revenue Service had approved the federal estate tax return without question or comment. But "[t]hat's not binding on the Attorney General," he conceded.

¶ 14　　　　The circuit court granted the State's motion for summary judgment and denied Glenda's motion for summary judgment.

¶ 15　　　　This appeal followed.

¶ 16　　　　　　　　　　　　　　　II. ANALYSIS

¶ 17　　　　Section 3(a) of the Illinois Estate and Generation-Skipping Transfer Tax Act (Act) (35 ILCS 405/3(a) (West 2014)) imposes an estate tax "on every taxable transfer involving transferred property having a tax situs within the State of Illinois." A " '[t]axable transfer' means an event that gives rise to a state tax credit" within the meaning of section 2011 of the Internal Revenue Code as that section read on December 31, 2001 (26 U.S.C. § 2011 (2000)). 35 ILCS 405/2(b), (b-1) (West 2014).

¶ 18    Under section 2011(a) (26 U.S.C. § 2011(a) (2000)), the United States government, when calculating the federal estate tax, allows a state tax credit in "the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or the District of Columbia." The amount of the Illinois estate tax is, with adjustments, the amount of the state tax credit. 35 ILCS 405/2(b), 3(c) (West 2014). The amount of the state tax credit depends in turn on the amount of the adjusted taxable estate; the state tax credit increases as the value of the adjusted taxable estate increases. 26 U.S.C. § 2011(b) (2000). The adjusted taxable estate is "the taxable estate reduced by $60,000" (*id.* § 2011(b)), and the taxable estate is the gross estate minus allowable deductions (*id.* § 2051). The ultimate result of all those interlocking definitions is that the higher the value of the gross estate, the higher the Illinois estate tax.

¶ 19    Illinois determines gross value the same way the federal government does. "[T]he gross value of transferred property," the Act says, "shall be its value as finally determined for purposes of the federal transfer tax." 35 ILCS 405/5(c) (West 2014). The federal government, generally speaking, attributes to the transferred property the fair market value it had when the decedent died; "[t]he value of the gross estate," section 2033 provides, "shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." 26 U.S.C. § 2033 (2012).

¶ 20    The phrase "at the time of his death" (*id.*) is a hole in the net of federal estate taxation: Spouses can hold land in joint tenancy with right of survivorship, and at the time of death it is impossible for the deceased spouse (or his or her estate) to own any interest in a joint tenancy estate. That is because when one of two joint tenants dies, the surviving joint tenant is left as the sole owner of the land (*Bonczkowski v. Kucharski*, 13 Ill. 2d 443, 450 (1958); *Eckardt v. Osborne*,

338 Ill. 611, 615 (1930)), which never becomes part of the decedent's probate estate (*In re Estate of Alpert*, 102 Ill. App. 3d 600, 602 (1981)).

¶ 21		This is not, strictly speaking, because the two joint tenants owned 50% apiece and the deceased tenant's 50% share was automatically *transferred*, by operation of law, to the surviving tenant. Instead, as the supreme court explains:

> "In the case of a joint tenancy all the tenants have together, in the theory of the law, but one estate in the land[,] and this estate each joint tenant owns conjointly with the other tenants. All the joint tenants, whether only two or more than two, constitute[,] for some purposes[,] but one tenant, or, as it has been more specifically stated, each joint tenant is regarded as the tenant of the whole for purposes of tenure and survivorship while for purposes of alienation and forfeiture each has an undivided share only.
>
> In a joint tenancy[,] there are said by Blackstone to be four unities, to-wit, unity of interest, unity of title, unity of time, and unity of possession, or, in other words, joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession.
>
> Since joint tenants in theory have together but one estate, they both necessarily have the same amount of interest." (Internal quotation marks omitted.) *Duncan v. Suhy*, 378 Ill. 104, 109 (1941).

It follows that until the joint tenancy is severed, "the title and interest are not divided into fractional shares"; rather, "[a]n estate held in joint tenancy is but one estate, not a number of estates equal to

the number of joint tenants, and joint tenants take and hold property as though they together constitute one person." 48A C.J.S. *Joint Tenancy* § 28, at 263 (2014).

¶ 22 Therefore, according to the common law of real property, it would be incorrect to say that when a joint tenant dies, his or her share *passes* to the surviving joint tenant:

> "The decedent's share does not have to pass to the survivor[,] because the survivor already owns the whole. Ordinarily, therefore, it is considered that the survivor takes no new title or right, and because joint tenants are seized of the whole while alive, the survivor's interest is simply a continuation, or extension, of his or her existing interest." *Id.* § 3, at 229.

In short, then, there is no transfer at the death of one of two joint tenants; it is just that, before, there were two 100% owners and now there is only one 100% owner, the surviving tenant.

¶ 23 This peculiarity of real property law, if unaddressed, would pose a problem for the federal estate tax, which is "an excise tax on the transfer of property at death." *Estate of Bonner v. United States*, 84 F.3d 196, 198 (5th Cir. 1996). It is, after all, "[s]tate law" that "creates legal interests and rights" (*Morgan v. Commissioner of Internal Revenue*, 309 U.S. 78, 80 (1940)) and "determines what property is transferred at death" (*Propstra v. United States*, 680 F.2d 1248, 1251 n.3 (9th Cir. 1982)), and "[t]he federal revenue acts designate what interests or rights, *so created [by state law]*, shall be taxed" (emphasis added) (*Morgan*, 309 U.S. at 80). Since, according to state law, there is no transfer at the death of a joint tenant but, rather, "the survivor's interest is simply a continuation, or extension, of his or her existing interest" (48A C.J.S. *Joint Tenancy* § 3, at 229 (2014)), no federal estate tax would be imposed on the decedent's extinguished interest in the joint tenancy property—that is, no estate tax would be imposed but for section 2040 of the

Internal Revenue Code (26 U.S.C. § 2040 (2012)). See *Estate of Young v. Commissioner of Internal Revenue*, 110 T.C. 297, 307 (1998).

¶ 24        Section 2040(a) begins by including in the decedent's gross estate the date-of-death fair market value of the entire joint interest. *Young*, 110 T.C. at 314. Then, subject to proof (26 C.F.R. § 20.2040-1(a) (2015)), adjustments to this 100% inclusion are made. For one thing, "[t]o the extent that the property was acquired by the decedent and the other joint owner or owners by gift, devise, bequest, or inheritance," only "the decedent's fractional share of the property is included." *Id.* "In all other cases, the entire value of the property is included except such part of the entire value as is attributable to the amount of the consideration in money or money's worth furnished by the other joint owner or owners." *Id.* § 20.2040-1(a)(2).

¶ 25        To that general valuation methodology in section 2040(a) (26 U.SC. § 2040(a) (2012)), section 2040(b) makes the following exception, which is highly significant to this appeal:

"(b) Certain joint interests of husband and wife.—

(1) Interests of spouse excluded from gross estate.— Notwithstanding subsection (a), in the case of any qualified joint interest, the value included in the gross estate with respect to such interest by reason of this section is one-half of the value of such qualified joint interest.

(2) Qualified joint interest defined.—For purposes of paragraph (1), the term 'qualified joint interest' means any interest in property held by the decedent and the decedent's spouse as—

(A) tenants by the entirety, or

- 8 -

(B) joint tenants with right of survivorship, but only if the

decedent and the spouse of the decedent are the only joint tenants."

*Id.* § 2040(b).

Thus, under section 2040(b)(2)(B) (*id.* § 2040(b)(2)(B)), if A and B were married and, until A's death, they alone owned property (Blackacre) as joint tenants with right of survivorship, the value included in the decedent's gross estate shall be simply the fair market value of Blackacre divided by two.

¶ 26 This simple way of valuing A's interest in a spousally owned joint tenancy with right of survivorship is different from the way an interest in a tenancy in common would be valued. See 26 C.F.R. § 20.2040-1(b) (2015) ("The section has no application to property held by the decedent and any other person (or persons) as tenants in common."). If, as a tenant in common (as distinct from a joint tenant), the decedent owned an undivided 50% share of Blackacre, valuing that share would not be as easy as dividing 100% of the fair market value of Blackacre by two. Instead, the value of the 50% share would be discounted to account for the hassle of having to put up with cotenants, who might bring actions for an accounting and a partition or who might put the land to objectionable or inconvenient uses. Blackacre would be worth more, acre for acre, to a hypothetical willing buyer if the buyer stood to acquire all of Blackacre as opposed to an undivided fraction, with its obligation to deal with the whims and discontents of the other cotenants. See *Young*, 110 T.C. at 309. Such potential for inconvenience and annoyance would shave off some value from the 50% cotenancy or whatever the fraction is.

¶ 27 There is no fractional interest discount, however, in the case of a qualified joint interest (*id.* at 317); the value to be included in the decedent's gross estate is simply the fair market value of Blackacre divided by two (26 U.S.C. § 2040(b)(1), (b)(2)(B) (2012)). Congress so

decrees. *Id.* Accordingly, when adding up John's gross estate so as to calculate the Illinois estate tax, the State believes it should follow sections 2040(b)(1) and (b)(2)(B) (*id.* § 2040(b)(1), (b)(2)(B)) by dividing the fair market value of the three joint tenancy parcels by two—without allowing fractional interest discounts.

¶ 28       Glenda argues, to the contrary, that John's one-half shares in the joint tenancy parcels should be valued under section 2033 (*id.* § 2033) instead of section 2040(b)(1) (*id.* § 2040(b)(1)) because she made a qualified disclaimer of her survivorship interests in the three joint tenancy parcels. "[I]f a person makes a qualified disclaimer with respect to any interest in property, [subtitle B (*id.* §§ 2001 to 2801)] shall apply with respect to such interest as if the interest had never been transferred to such person." *Id.* § 2518(a). Consequently, Glenda reasons, subtitle B, the subtitle on gift and estate taxes, should be applied to John's 50% shares in the joint tenancy parcels as if those shares had never been transferred to her (see *id.*): Specifically, in Glenda's view, subtitle B should be applied to those shares as if they were interests in tenancies in common, to be valued under section 2033 (*id.* § 2033), instead of interests in joint tenancies, to be valued under section 2040(b) (*id.* § 2040(b)). In support of her reasoning, Glenda invokes not only the Illinois disclaimer statute (755 ILCS 5/2-7 (West 2014)) but also federal case law (*Black v. Commissioner of Internal Revenue*, 765 F.2d 862 (9th Cir. 1985), *McDonald v. Commissioner of Internal Revenue*, 853 F.2d 1494 (8th Cir. 1988), *Kennedy v. Commissioner of Internal Revenue*, 804 F.2d 1332 (7th Cir. 1986), and *Ferguson v. United States*, No. CIV. 79-092-TUC-RMB, 1981 WL 1809 (D. Ariz. Apr. 17, 1981)) as well as some examples in Treasury Regulation § 25.2518-2(c)(5) (26 C.F.R. § 25.2518-2(c)(5) (2015) (examples (12), (14))).

¶ 29              A. *Black, Ferguson*, and Section 2-7

¶ 30        In *Black*, Phyllis Black and Richard Black were married and held some securities as joint tenants. *Black*, 765 F.2d at 863. The Blacks created a revocable trust, naming themselves as trustees, and divided the corpus of the trust into "Schedule A, Husband's Property[,] and Schedule B, Wife's Separate Property." (Internal quotation marks omitted.) *Id.* Four days after creating the trust, the Blacks had the jointly held securities reissued to themselves as trustees. *Id.* at 863-64. A couple of months after this transfer of the securities into the trust, Richard died. *Id.* at 864. Under the trust agreement, Phyllis, as the surviving spouse, had to share with her daughter "the income interest in the one-half of the securities allocated to [Richard's] Trust," and Phyllis was prohibited from invading the principal of Richard's trust unless an independent trustee allowed her to do so. *Id.* at 865.

¶ 31        Such contractual provisions, in Phyllis's view, showed that there had been an *inter vivos* severance of the joint tenancy. Therefore, in the federal estate tax return that Phyllis prepared for Richard's estate, she included only the assets listed in Schedule A, the schedule listing the "Husband's Separate Property." (Internal quotation marks omitted.) *Id.* at 864. That went for the securities, too: She included only the securities listed in Schedule A. *Id.* The Commissioner of Internal Revenue responded with a notice of deficiency: He took the position that on the date of Richard's death, the Blacks held both the Schedule A assets and the Schedule B assets as joint tenants. "Accordingly, [the Commissioner] included the entire value of the trust assets, less the contribution of the surviving spouse, in the gross estate pursuant to I.R.C. § 2040." *Id.* The United States Tax Court agreed with the Commissioner. *Id.*

¶ 32        The Ninth Circuit disagreed with the Tax Court and Commissioner and agreed with Phyllis: Only Richard's interest under the trust agreement should have been included in his gross estate (*id.* at 867-68) because, under Arizona law, the *inter vivos* transfer of the jointly held

- 11 -

securities into the trust had severed the joint tenancy by modifying the right of survivorship (*id.* at 865). "This modification of the right of survivorship, which the common law regards as a severance of the joint tenancy, removed the trust property from the reach of section 2040, for the Blacks did not hold the property as 'joint tenants with right of survivorship' within the meaning of the statute." *Id.* at 867.

¶ 33       In the present case, by contrast, there was no *inter vivos* modification of survivorship interests. That makes *Black* distinguishable. This case is nothing like *Black* because, at John's death, the Baillies still held the three parcels as joint tenants with right of survivorship. See 26 U.S.C. § 2040(b)(2)(B) (2012). The joint tenancies were never severed. Although, after John's death, Glenda gave up her survivorship interests by disclaiming them, the joint tenancies were never severed while John was alive—which was the only time the joint tenancies could have been severed (see *Klajbor v. Klajbor*, 406 Ill. 513, 517 (1950)). The joint tenancy in *Black*, by contrast, was severed during Richard's lifetime, and it was because "the decedent and his spouse had not held the property jointly at the time of his death" that the Ninth Circuit held section 2040 to be inapplicable. *Black*, 765 F.2d at 866.

¶ 34       Glenda argues, however, that under section 2-7(d)(1)(a) of the Probate Act of 1975 (Probate Act) (755 ILCS 5/2-7(d)(1)(a) (West 2014)) her disclaimer of the survivorship interests in the three joint tenancy parcels accomplished what would have been impossible under the common law: a severance of the joint tenancies after John's death. *Cf. Klajbor*, 406 Ill. at 518; 48A C.J.S. *Joint Tenancy* § 55 (2014). We see nothing in the language of section 2-7 (755 ILCS 5/2-7 (West 2014)) that would justify such a conclusion.

¶ 35       Section 2-7(d) of the Probate Act reads as follows:

"(d) Effect of Disclaimer. Unless expressly provided otherwise in an instrument transferring the property or creating the interest disclaimed, the property, part or interest disclaimed shall descend or be distributed (1) if a present interest (a) in the case of a transfer by reason of the death of any person, as if the disclaimant had predeceased the decedent; (b) in the case of a transfer by revocable instrument or contract, as if the disclaimant had predeceased the date the maker no longer has the power to transfer to himself or another the entire legal and equitable ownership of the property or interest; or (c) in the case of any other inter vivos transfer, as if the disclaimant had predeceased the date of the transfer; and (2) if a future interest, as if the disclaimant had predeceased the event which determines that the taker of the property or interest has become finally ascertained and his interest has become indefeasibly fixed both in quality and quantity; and in each case the disclaimer shall relate back to such date for all purposes." *Id.* § 2-7(d).

Of that quoted statutory text, subsection (d)(1)(c) (*id.* § 2-7(d)(1)(c)) is, we conclude, the relevant provision. Our reasoning for that conclusion is as follows. Because, in the case of a joint tenancy, the surviving joint tenant already owned an undivided interest in the whole (*Duncan*, 378 Ill. at 109), there was no "transfer by reason of the death of any person" (755 ILCS 5/2-7(d)(1)(a) (West 2014); 48A C.J.S. *Joint Tenancy* § 3, at 229 (2014); *Ferguson*, 1981 WL 1809, at *3), and, hence, the applicable subsection of 2-7 is subsection (d)(1)(c) (755 ILCS 5/2-7(d)(1)(c) (West 2014)): Glenda obtained her 100% interests by *inter vivos* transfers, at the creation of the three joint tenancies, and after John's death, she disclaimed a 50% share of each joint tenancy. The result is that the disclaimed 50% shares were distributed "as if" Glenda had predeceased the transfer of the parcels to herself and John in joint tenancy with right of survivorship. *Id.*

¶ 36     The expression "as if" signals the imminent use of the subjunctive mood, a verbal mood which "expresses *** conditions that are contrary to fact." Andrea Lunsford & Robert Connors, The St. Martin's Handbook, at 208 (1989). It is contrary to fact that Glenda predeceased the transfers of the three parcels to herself and John in joint tenancy with right of survivorship. Likewise, it would be contrary to fact to deny that, upon John's death, Glenda was left as the sole owner of the three parcels. (Surely, the ownership of the three parcels was not in limbo during the six months between John's death and Glenda's disclaimer.) Nevertheless, the disclaimed 50% share in each joint tenancy parcel is to be distributed "as if" Glenda had predeceased the transfers of the parcels to her and John in joint tenancy and "as if" she were not left as the sole owner of the parcels at John's death (755 ILCS 5/2-7(d) (West 2014))—"conditions that are contrary to fact." Lunsford, *supra*, at 208. That is all section 2-7(d)(1)(c) says: It is concerned only with how the disclaimed interest is to be *distributed*. It does not say that after a joint tenant dies, a disclaimer of the survivorship interest somehow retroactively severs the joint tenancy; section 2-7(d) does not even use the word "severs" or "severance."

¶ 37     One could say, like the Arizona court, that "upon renunciation by a joint tenant," section 2-7(d) of the Probate Act, in a manner of speaking, "destroys the joint tenancy of the renouncing tenant and creates a tenancy in common as to that tenant." *Ferguson*, 1981 WL 1809, at *3. But that is a long way from saying, as in *Black*, that the joint tenancy was severed before the other joint tenant died—which, again, under the common law, is the only period of time when a joint tenancy can be severed (*Klajbor*, 406 Ill. at 518). "Any legislative intent to abrogate the common law must be clearly and plainly expressed" (internal quotation marks omitted) (*Murphy-Hylton v. Lieberman Management Services, Inc.*, 2015 IL App (1st) 142804, ¶ 27), and we do not find in section 2-7(d) a clearly expressed intent to abrogate the rule in *Klajbor* that "[t]he

severance, or attempted severance, must take place before the death of the cotenant and before the other, as a consequence, has become the owner of the whole by virtue of the right of survivorship." 4 Michael P. Elroy, Horner Probate Practice and Estates § 73:11 (4th rev. ed. 2002) (citing *Klajbor*, 406 Ill. 413). A joint tenancy that, by reason of a joint tenant's death, ceases to exist cannot be severed. Section 2-7 is not a time machine.

¶ 38                                              B. *Kennedy* and *McDonald*

¶ 39         In *Kennedy*, Frank Kennedy gave his wife, Pearl Kennedy, a gift in 1953 by deeding a farm to the two of them as joint tenants with right of survivorship. *Kennedy*, 804 F.2d at 1333. Frank died in 1978, whereupon Pearl, as the surviving joint tenant, was left as the sole owner of the farm. *Id.* In 1979, Pearl disclaimed her survivorship interest in the farm, and as a result, the Kennedys' daughter became the owner of an undivided 50% share of the farm. *Id.*

¶ 40         The controversy in *Kennedy* was whether Pearl should incur a gift tax as a consequence of effectively giving her survivorship interest in the farm to the daughter. *Id.* There was no dispute that the disclaimer was a gift to the daughter (the gift was no less a gift for being indirect); the dispute, instead, was whether Pearl's disclaimer was a qualified disclaimer. If the disclaimer was qualified, it would trigger no gift tax, but if the disclaimer was unqualified, Pearl would have to pay a gift tax. *Id.*

¶ 41         Whether the disclaimer was qualified depended in part on whether Pearl made the disclaimer within a reasonable time after the transfer to herself of the interest she disclaimed. *Id.* The Internal Revenue Service and the Tax Court were of the view that the transfer to Pearl happened in 1953. *Id.* If that were the case, if the transfer to Pearl happened so long ago, her disclaimer would be unqualified because waiting until 1979 to make the disclaimer would not be making it within a reasonable time. *Id.*

¶ 42        But the Seventh Circuit disagreed with the Internal Revenue Service and the Tax Court that the relevant transfer to Pearl happened in 1953; the relevant transfer, the Seventh Circuit held, was in 1978, when Frank died. As the Seventh Circuit put it, "the gift of a joint tenancy with right of survivorship should be treated as more than one transfer in states that allow any tenant to partition the property at will. One transfer is an undivided interest, given on the date the tenancy is created. Additional transfers occur on the death of other joint tenants." *Id.* at 1336.

¶ 43        The Eighth Circuit followed *Kennedy* in *McDonald*, a case with similar facts. The Eighth Circuit "conclude[d] that the relevant transfer for the purpose of the disclaimer provisions occurs at the death of the joint tenant and not at the creation of the joint tenancy." *McDonald*, 853 F.2d at 1501.

¶ 44        Glenda points out that the Department of the Treasury has adopted the position of the Seventh and Eight Circuits and that, under Treasury Regulation § 25.2518-2(c)(4)(i) (26 C.F.R. § 25.2518-2(c)(4)(i) (2015)), she made a qualified disclaimer of her survivorship interests in the three joint tenancy by disclaiming those interests within nine months after John's death. See also 26 U.S.C. § 2518(b)(2) (2012) (nine-month rule for a qualified disclaimer).

¶ 45        That Glenda made a qualified disclaimer of her survivorship interests in the three joint tenancy parcels—in other words, that she met all the statutory requirements for a qualified disclaimer (see *id.* § 2518(b))—does not appear to be in question. Instead, the question is whether her qualified disclaimer destroyed the identity of the three parcels as qualified joint interests within the meaning of section 2040 (*id.* § 2040(b)(2)(B)). If, because of Glenda's disclaimer, the three parcels no longer meet the statutory definition of a qualified joint interest, John's 50% shares in those parcels should be valued under section 2033 (*id.* § 2033), which allows fractional interest discounts. Alternatively, if, despite Glenda's disclaimer, the parcels are still qualified joint

interests as defined in section 2040(b)(2)(B) (*id.* § 2040(b)(2)(B)), they must be valued as section 2040(b)(1) prescribes: "one-half of the value of such qualified joint interest." *Id.* § 2040(b)(1).

¶ 46    When it comes to this pivotal question, Glenda relies heavily on examples (12) and (14) in Treasury Regulation § 25.2518-2(c)(5) (26 C.F.R. § 25.2518-2(c)(5) (2015) (examples (12), (14)))—examples which, she argues, are entitled to "substantial weight and deference." *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 387 n.9 (2010). But it is not as simple as that; the deference is conditional: "[C]ourts will give substantial weight and deference to an interpretation of an *ambiguous* statute by the agency charged with the administration and enforcement of the statute." (Emphasis added.) *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 152 (1983). Statutory ambiguity is a prerequisite to this duty of deference. *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 657 (2005). If the language of a statute is clear and unambiguous, it must be applied without resort to other aids of construction—including agency interpretations. See *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 238 (2004). No amount of agency expertise can alter the meaning of an unambiguous statute. See *Gray Panthers v. Department of Insurance*, 110 Ill. App. 3d 971, 973 (1982).

¶ 47    The threshold question, then, is whether the statutes that Treasury examples (12) and (14) (26 C.F.R. § 25.2518-2(c)(5) (2015) (examples (12), (14))) purport to interpret and illustrate are ambiguous. See *Illinois Consolidated*, 95 Ill. 2d at 152; *Illinois Bell*, 362 Ill. App. 3d at 657. "A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways." *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395-96 (2003).

¶ 48 So, we begin by applying the *Krohe* standard to the relevant sections of the Internal Revenue Code, asking whether reasonably well-informed persons could understand the language of those sections in different ways. See *id.* The first relevant section of the Internal Revenue Code is section 2518(a) (26 U.S.C. § 2518(a) (2012)), which provides that "if a person makes a qualified disclaimer with respect to any interest in property," then subtitle B, the subtitle on estate and gift taxes, "shall apply with respect to such interest as if the interest had never been transferred to such person." We know, from the next subsection, subsection (b) (*id.* § 2518(b)), what a qualified disclaimer is, and the language of subsection (a) (*id.* § 2518(a)) is straightforward and easy to understand. We conclude, *de novo*, that section 2518(a) is unambiguous. See *Lake County Board of Review v. Property Tax Appeal Board*, 192 Ill. App. 3d 605, 618 (1989).

¶ 49 The next relevant section of the Internal Revenue Code is section 2040(b) (26 U.S.C. § 2040(b) (2012)), which we quoted earlier. We likewise find section 2040(b) to be unambiguous. Under the plain language of that section, a qualified joint interest includes "any interest in property held by the decedent and the decedent's spouse as *** joint tenants with right of survivorship, but only if the decedent and the spouse of the decedent are the only joint tenants." *Id.* § 2040(b)(2)(B). Because any such joint tenancy with right of survivorship would end instantaneously at the death of either of the two joint tenants (*Merchants National Bank of Aurora v. Olson*, 27 Ill. App. 3d 432, 434 (1975); 48A C.J.S. *Joint Tenancy* § 49, at 292-93 (2012)), the spouses can "hold" the property "as *** joint tenants with right of survivorship," as section 2040(b)(2)(B) (26 U.S.C. § 2040(b)(2)(B) (2012)) says, only until one of them dies. Necessarily, then, section 2040(b)(2)(B) is concerned only with the period until the decedent's death: If, until the death of one of them, the spouses hold land in joint tenancy with right of survivorship and if

they are the only two joint tenants, the decedent's interest in the land will be valued under section 2040(b)(1) (*id.* § 2040(b)(1)). It is that simple.

¶ 50    Disclaiming the survivorship interest after the decedent's death cannot change how the property was held until the decedent's death. Such a disclaimer, as the circuit court observed, has no tendency to undo the fulfilled condition in section 2040(b)(2)(B) (*id.* § 2040(b)(2)(B)). All disclaiming a survivorship interest does is cause a distribution of the survivorship interest to someone else at the decedent's death (see 755 ILCS 5/2-7(d) (West 2014)); it does not change how the property was held before the decedent's death.

¶ 51    If, at the decedent's death, the surviving spouse disclaims the survivorship interest in the land they had held as joint tenants, then subtitle B, which includes sections 2033 (*id.* § 2033) and 2040 (*id.* § 2040), "shall apply with respect to such interest as if the interest had never been transferred to such person"—that is, as if the survivorship interest had never been transferred to the disclaimant. *Id.* § 2518(a) ("For purposes of this subtitle, if a person makes a qualified disclaimer with respect to any interest in property, this subtitle shall apply with respect to such interest as if the interest had never been transferred to such person."). But cancelling or revoking the transfer of the survivorship interest to the disclaimant, the surviving spouse, makes no difference to subsection (b)(2)(B) of section 2040 (*id.* § 2040(b)(2)(B)) because all that subsection cares about is whether, until the decedent's death, the decedent and his or her spouse held the property in joint tenancy with right of survivorship. To cancel *that* condition, it would be necessary to cancel the earlier transfer, the one that created the joint tenancy—but that transfer is not the one that gets cancelled by the disclaimer of the survivorship interest. See *id.* § 2518(a); 26 C.F.R. § 25.2518-2(c)(4)(i) (2015). (Here we are applying the bifurcated transfer theory of *Kennedy* and *McDonald*, assuming for the sake of argument that it is legally correct.)

¶ 52    In sum, Glenda's disclaimer of her survivorship interests in the three joint tenancy parcels is irrelevant to section 2040(b)(2)(B) (26 U.S.C. § 2040(b)(2)(B) (2012)) because the disclaimer left unaltered the fact that she and John held those parcels in joint tenancy with right of survivorship until John died (see *id.* § 2518(a)), making those parcels qualified joint interests. Again, "the term 'qualified joint interest' means any interest in property held by the decedent and the decedent's spouse as *** joint tenants with right of survivorship, but only if the decedent and the spouse of the decedent are the only joint tenants." *Id.* § 2040(b)(2)(B). By the terms of that statute, it is not the *transfer* of the survivorship interest that makes a qualified joint interest; rather, it is the holding of a vested present interest together with an unvested expectancy, the "*right* of survivorship." (Emphasis added.) *Id.*; see also *Porter v. Porter*, 381 Ill. 322, 329 (1942); 48A C.J.S. *Joint Tenancy* § 3, at 228 (2012). Consequently, we conclude that undoing the vesting of the survivorship interest (see 26 U.S.C. § 2518(a) (2012)) makes no difference to section 2040(b)(2)(B) (*id.* § 2040(b)(2)(B)), which sees a qualified joint interest if, until the decedent's death, the decedent and his or her spouse held not a vested but an unvested right of survivorship.

¶ 53    Because that conclusion flows from the unambiguous language of sections 2518(a) and 2040(b) (*id.* §§ 2518(a), 2040(b)), we recognize no duty of deference toward examples (12) and (14) of Treasury Regulation § 25.2518-2(c)(5) (26 C.F.R. § 25.2518-2(c)(5) (2015) (examples (12), (14))). See *Illinois Consolidated*, 95 Ill. 2d at 152; *Illinois Bell*, 362 Ill. App. 3d at 657. Besides, regarded deferentially or undeferentially, the analysis in those examples is problematic. A joint bank account is not, as the examples assume, a joint tenancy with right of survivorship. *Pescetto v. Colonial Trust & Savings Bank*, 129 Ill. App. 3d 608, 609 (1984); 48A C.J.S. *Joint Tenancy* § 2, at 225 (2012). Even though Congress differentiates a joint tenancy with right of survivorship from a joint bank account (26 U.S.C. § 2040(a) (2012)), examples (12) and (14)

equate these two significantly different kinds of joint interests. In that respect, examples (12) and (14) are more confusing than enlightening. Sections 2518(a) and 2040(b) of the Internal Revenue Code speak clearly and plainly and require no illustration.

¶ 54                                    III. CONCLUSION

¶ 55            For the foregoing reasons, we affirm the trial court's judgment.

¶ 56            Affirmed.

**No. 4-18-0655**

| | |
|---|---|
| **Cite as:** | *Baillie v. Raoul*, 2019 IL App (4th) 180655 |
| **Decision Under Review:** | Appeal from the Circuit Court of Ford County, No. 15-P-26; the Hon. Matthew John Fitton, Judge, presiding. |
| **Attorneys for Appellant:** | Jeremy J. Stoller, of Stoller Law Office, of El Paso, and John R. Simpson, of Sorling Northrup, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Carl J. Elitz, Assistant Attorney General, of counsel), for appellees. |