# Illinois Official Reports

## Appellate Court

---

### *In re Estate of Dunston*, 2020 IL App (5th) 190017

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF JAMES R. DUNSTON, Deceased (Kwame Raoul, in His Official Capacity as Attorney General of the State of Illinois, Plaintiff-Appellant, v. Judith L. Dunston, Individually and as Co-Trustee of the James R. Dunston Trust; Brett A. Dunston, Individually and as Co-Trustee of the James R. Dunston Trust; and Julie A. Ridgeway, Individually and as Co-Trustee of the James R. Dunston Trust, Defendants-Appellees). |
| District & No. | Fifth District<br>No. 5-19-0017 |
| Filed | February 27, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Williamson County, No. 18-L-114; the Hon. Brad K. Bleyer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Carl J. Elitz, Assistant Attorney General, of counsel), for appellant.<br><br>Gregory E. Moredock, of Sorling Northrup, of Springfield, Jonathan E. Strouse, of Harrison & Held, LLP, of Chicago, and Mark J. Ballard, of Black, Ballard, McDonald, P.C., of Mt. Vernon, for appellees. |

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.
Presiding Justice Welch and Justice Boie concurred in the judgment and opinion.


## OPINION

¶ 1       In this estate case, the plaintiff, Kwame Raoul, in his official capacity as Attorney General of the State of Illinois (Attorney General), appeals the December 10, 2018, order of the circuit court of Williamson County that granted the defendants' motion to dismiss the Attorney General's complaint for unpaid Illinois estate tax. For the following reasons, we affirm.

¶ 2                                  BACKGROUND

¶ 3       James R. Dunston passed away on May 2, 2014. Defendant Judith L. Dunston (Judy) is James's surviving spouse. Defendants Brett A. Dunston and Julie A. Ridgeway are James's surviving children. The defendants, collectively, are co-trustees of the James R. Dunston Trust (Trust) that James executed on December 4, 2007. Two additional trusts were established pursuant to the Trust, namely, the "Marital Trust" and the "Family Trust."

¶ 4       A review of the evolution of estate tax law and its application to this case is derived from the pleadings in the record and is as follows. Before 2010, the federal estate tax and the Illinois estate tax had essentially the same exemption amounts. When James executed the Trust in 2007, under both federal law and Illinois law that was in effect at that time, the provisions of the Trust were organized so there would be no estate tax due at the time of James's death. This was the result intended by James and the drafter of the Trust and was a typical estate plan in 2007, as Congress and all states recognized that estate tax should be deferred until the death of the surviving spouse so maximum funds would be available for a surviving spouse to live on. See 26 U.S.C. § 2056 (2006).

¶ 5       However, after 2009, due to changes in the law, the federal exemption amount increased while the Illinois exemption amount remained the same, thereby creating a gap between the two exemptions. Accordingly, part of the Family Trust now needed to qualify for an Illinois marital deduction to create zero Illinois estate tax liability at James's death. Illinois qualified terminable interest property (QTIP) legislation was created to alleviate the dilemmas that were faced by Illinois estate planners due to the differing exemption amounts. When James executed the Trust in 2007, no QTIP election would have been needed to defer Illinois estate tax during Judy's lifetime because an amount equal to the federal exemption was placed in the Family Trust and at that time the federal and Illinois exemption amounts matched. However, because the changes in the law that came into effect before James passed away in 2014 created the divergence between the federal and Illinois exemption amounts, an Illinois QTIP election was needed at the time of James's death in order to achieve the same result of Illinois estate tax being deferred until Judy's death.

¶ 6       When the Trust was executed, the Family Trust contained a provision, specifically a "Lifetime Power of Appointment" exercisable by Judy during her lifetime to distribute the Family Trust to James's children and their spouses (Power). The existence of the Power was without consequence when the Trust was executed in 2007. However, it posed a problem by

the time James passed away in 2014 because of the above-cited amendments to the law. As indicated, when James passed away there was a deviation between the federal and Illinois exemption amounts that did not exist when the Trust was executed. Accordingly, an Illinois QTIP election was now needed in order to defer Illinois estate taxes until Judy's death. The law governing QTIP imposed certain conditions that were mandated for a QTIP election to be valid. The Power offended those conditions, thereby rendering invalid the QTIP election that was made on the Illinois estate tax return.

¶ 7       As with many estate documents drafted before the changes in the law, the Trust was not modified or amended after the law changed and before James's death. However, both federal law and Illinois law recognize that corrections to drafting in such documents are often needed, postmortem, to address various estate tax issues. Accordingly, both federal and Illinois law allow disclaimers of offending provisions to correct any deficiencies, thereby bringing documents into compliance with the law while upholding the wishes of decedents.

¶ 8       After James passed away on May 2, 2014, an Illinois estate tax return was prepared on behalf of James's estate (Estate), signed by Judy on May 15, 2015, in her capacity as executor of the Estate, and marked as received by the Attorney General on June 26, 2015. The Illinois return reported a "tentative taxable estate" from the federal return in the amount of $5,050,687.84 and elected a QTIP deduction in the amount of $1,050,687.84. Attached to the return was an "Affidavit [t]o Substantiate [QTIP] Election [f]or Illinois Estate Tax Purposes." The affidavit itemized various assets of the Estate and assigned a value to each, thereby substantiating the QTIP election total of $1,050,687.84. This Illinois QTIP election on the Estate's tax return, if valid, would result in a tentative Illinois taxable estate in the amount of $4 million and no Illinois estate tax being due until Judy's death.

¶ 9       Following an audit, the Attorney General determined that the Estate's Illinois QTIP election did not satisfy the QTIP requirements because the provision in the Family Trust created the Power to appoint property to individuals other than Judy as the surviving spouse. Accordingly, the Attorney General denied the Illinois QTIP election and assessed unpaid Illinois estate tax as of February 2, 2015. On June 20, 2018, the Attorney General filed a four-count complaint against the defendants, claiming personal liability for estate tax trustees, personal liability for estate tax intestate heirs, personal liability for estate tax surviving joint tenant, and personal liability for assets payable on death. The complaint alleged, *inter alia*, that the Illinois QTIP election made by Judy was invalid and cited section 2056(b)(7)(B)(ii)(II) of the Internal Revenue Code (Federal Code) in support of the contention that, for the Illinois QTIP election to be valid, no person may have the power to appoint any property to any person other than the surviving spouse. 26 U.S.C. § 2056(b)(7)(B)(ii)(II) (2018).

¶ 10      The complaint contended that the prohibition of power of appointment set forth in section 2056(b)(7)(B)(ii)(II) of the Federal Code (*id.*) was violated by the following provision of the Family Trust: "Lifetime Power of Appointment. During my spouse's life, the trustee shall distribute the Family Trust to any one or more of my descendants and their spouses as my spouse from time to time appoints." Accordingly, the complaint alleged that the Illinois QTIP election on the tax return was invalid because of the Power created by this provision. The Attorney General requested the circuit court to, *inter alia*, find Judy liable for $398,516, which consisted of unpaid Illinois estate tax and the statutory interest accrued thereon through June 22, 2018.

¶ 11     Again, both federal law and Illinois law recognize that corrections to drafting in estate documents are often needed after a decedent dies to address various estate tax issues. To that regard, both federal and Illinois law allow disclaimers of offending provisions to correct any deficiencies. On July 19, 2018, pursuant to section 2-7 of the Probate Act of 1975 (Illinois Probate Act) (755 ILCS 5/2-7 (West 2018)), Judy executed a written disclaimer of the above-referenced Power that had caused the Illinois QTIP election to be denied (Disclaimer). The Disclaimer was effective retroactively to May 2, 2014, the date of James's death.

¶ 12     On July 27, 2018, the defendants filed a motion to dismiss the Attorney General's complaint, in which they alleged, *inter alia*, that Judy filed the Disclaimer in the circuit court, pursuant to section 2-7(d) of the Illinois Probate Act. *Id.* § 2-7(d). The motion alleged that the Trust made no other powers of appointment other than that which Judy disclaimed. The motion further alleged that the effect of the Disclaimer is that the Power ceased to exist, thereby bringing the Trust into compliance with Illinois QTIP requirements in that the Trust no longer granted Judy the Power to appoint any part of the property to a person other than the surviving spouse. See 26 U.S.C. § 2056(b)(7)(B)(ii)(II) (2018). Accordingly, the defendants requested the circuit court to, *inter alia*, dismiss the Attorney General's complaint with prejudice.

¶ 13     On August 8, 2018, the Attorney General filed a motion for leave to file a response *instanter* to the defendants' motion to dismiss, which the circuit court granted. In its response, the Attorney General contended, *inter alia*, that the Disclaimer Judy filed was ineffective for Illinois estate tax purposes. The Attorney General indicated that the Illinois Estate and Generation-Skipping Transfer Tax Act (Illinois Estate Act) allows taxpayers to claim a QTIP election for Illinois estate tax purposes. See 35 ILCS 405/2(b-1) (West 2018). To this regard, the Illinois Estate Act expressly adopts section 2056(b)(7) of the Federal Code (see *id.*), which provides a definition of QTIP and sets forth the requirements necessary for a valid QTIP election. See 26 U.S.C. § 2056(b)(7) (2018). The Attorney General cited section 2056(b)(7)(B)(ii)(II) of the Federal Code, which allows a QTIP deduction where a decedent's surviving spouse has a life interest in income from the property and where no person has a power to appoint the property to anyone other than the surviving spouse. See 26 U.S.C. § 2056(b)(7)(B)(ii)(II) (2018).

¶ 14     The Attorney General contended in its response to the motion to dismiss that Judy's Disclaimer was not qualified because it failed to satisfy the requirements of section 2518 of the Federal Code, which governs disclaimers at the federal level. See 26 U.S.C. § 2518 (2018). In particular, the Attorney General alleged that, for Judy's Disclaimer to be valid under the Federal Code, it must have been executed within nine months of the date when the offending Power became effective on May 4, 2014, the date of James's death. See 26 U.S.C. § 2518(b)(2)(A) (2018). The Attorney General argued that the Disclaimer was invalid for Illinois estate tax purposes because it was not filed until July 19, 2018, over three years past the deadline mandated by section 2518(b)(2)(A) of the Federal Code. *Id.* Accordingly, the Attorney General requested the circuit court to deny the defendants' motion to dismiss.

¶ 15     On September 26, 2018, the defendants filed a memorandum of law in support of their motion to dismiss and reply to the Attorney General's response. In the reply, the defendants acknowledged the Attorney General's argument that, under the federal law governing disclaimers, Judy's Disclaimer in this case would have been required to have been made within nine months of James's death. However, the defendants cited section 2(b-1) of the Illinois Estate Act, which indicates that the Illinois QTIP election is "separate and independent" from

the federal QTIP election. 35 ILCS 405/2(b-1) (West 2018). Because the Illinois QTIP election was designated by the legislature as "separate and independent" from the federal election, the defendants argued that Judy's Disclaimer should not be governed by the federal law on disclaimers but by Illinois law on disclaimers, which provides that the validity of a disclaimer does not hinge on execution within a specific time period. 755 ILCS 5/2-7(d) (West 2018). Rather, in Illinois, a disclaimer of property passing by reason of the death of a person is treated as if the disclaimant predeceased the decedent, and the disclaimer "shall relate back to such date for all purposes." *Id.* Because section 2(b-1) of the Illinois Estate Act refers to a QTIP election in Illinois that is "separate and independent" of a federal QTIP election (see 35 ILCS 405/2(b-1) (West 2018)), the defendants argued that Illinois law on disclaimers governs, Judy's Disclaimer was valid, and the Illinois estate tax is deferred until Judy's death.

¶ 16     On December 10, 2018, the circuit court entered an order, finding Judy's Disclaimer effective under Illinois law for estate tax purposes and finding that the Disclaimer was not governed by the timeliness provisions of section 2518 of the Federal Code. Accordingly, the circuit court held that the Trust met the eligibility requirements for the marital deduction and any Illinois estate tax was deferred. The circuit court dismissed the Attorney General's complaint with prejudice. The Attorney General filed a timely notice of appeal.

¶ 17                                            ANALYSIS

¶ 18     The sole issue relevant to the disposition of this appeal is whether the circuit court correctly found that Judy's Disclaimer was not subject to the timeliness requirements set forth in section 2518 of the Federal Code (26 U.S.C. § 2518 (2018)), resulting in the Disclaimer being valid and the Illinois QTIP election being effective under Illinois law. "Our standard of review of a motion to dismiss under section 2-619 of the Code [of Civil Procedure] is *de novo.*" *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569 (2002). While the Attorney General agrees with this standard of review, it contends that there are statutory ambiguities to resolve in this case and, accordingly, this court should defer to the Attorney General's interpretation, as it is the agency charged with the administration of the statutes. See *Airey v. Department of Revenue*, 116 Ill. 2d 528, 536 (1987). For reasons discussed, *infra*, we need not defer to the Attorney General's interpretations of the statutes applicable to this case, as we find none to be ambiguous and a resolution of this issue to be readily available by observing the plain language of the statutes. See *id.*; see also *Apple Canyon Lake Property Owners' Ass'n v. Illinois Commerce Comm'n*, 2013 IL App (3d) 100832, ¶ 21 (deference to agency's interpretation not necessary when statute's language is clear and unambiguous, and no interpretation may alter statute's plain language).

¶ 19     At the outset, the Attorney General argues that the Estate failed to make a valid Illinois QTIP election by timely designating compliant property on its Illinois estate tax return because when it attempted to make the election on the Illinois return, the property was not federally QTIP eligible because the Power violated section 2056(b)(7)(B)(ii) of the Federal Code. 26 U.S.C. § 2056(b)(7)(B)(ii) (2018). The defendants counter—and we agree—that the circuit court ruled that the Disclaimer was valid, rendering moot any issue regarding the validity of the QTIP election absent the Disclaimer, as the Disclaimer was effective to eliminate the Power retroactively to James's death, thereby dispelling any argument regarding the deadline for a valid QTIP election on the tax return, which was filed after James's death. Accordingly, we

proceed in our investigation of whether the Disclaimer is effective or if it is barred by the provisions of section 2518 of the Federal Code. *Id.* § 2518.

¶ 20    The Attorney General argues that the circuit court erred in finding section 2518 of the Federal Code inapplicable to Judy's Disclaimer. See *id.* Pursuant to that section, for Judy's Disclaimer to be valid, it must have been executed within nine months of the date of James's death. *Id.* § 2518(b)(2)(A). Under such application, Judy's Disclaimer would not have been valid, as it was filed over three years past the nine-month deadline. If the Disclaimer would have been invalid, the Power would still have existed, thereby affirming the Attorney General's determination that the Illinois QTIP election on the Estate's tax return was not qualified, resulting in the Estate owing Illinois estate tax currently, rather than the tax being deferred until Judy's death.

¶ 21    The Attorney General correctly asserts that the provision of the Illinois Estate Act that allows an Illinois QTIP election defines the election as one "under Section 2056(b)(7) of the [Federal Code]" and that Illinois QTIP elections are valid only to the extent that they are taken pursuant to that section. 35 ILCS 405/2(b-1) (West 2018). However, section 2(b-1) of the Illinois Estate Act also makes clear that an Illinois QTIP election is "separate and independent" from a federal QTIP election. See *id.* The QTIP election at issue here is an Illinois QTIP election. The Estate owes no federal estate tax and a federal QTIP election is not under consideration.

¶ 22    The Attorney General aptly observes that the Illinois Estate Act adopted the Federal Code's definition of QTIP but then attempts to expand that to subject Illinois QTIP elections to the mandates of other sections of the Federal Code—particularly section 2518, which contains federal disclaimer limitations that govern federal QTIP elections. See 26 U.S.C. § 2518 (2018). In essence, the Attorney General argues that, because section 2(b-1) of the Illinois Estate Act adopted the Federal Code's section 2056(b)(7) definition of QTIP, the federal disclaimer restrictions governing federal QTIP elections under section 2518 of the Federal Code are also applicable to Illinois QTIP elections, notwithstanding the "separate and independent" language in section 2(b-1) of the Illinois Estate Act and notwithstanding the fact that section 2(b-1) does not reference section 2518 of the Federal Code. See 35 ILCS 405/2(b-1) (West 2018).

¶ 23    While the Illinois Estate Act adopted the Federal Code's definition of QTIP, it did not adopt the Federal Code's provisions on disclaimers. Nor was there a need to, as Illinois has its own law on disclaimers. If the Illinois General Assembly had intended to make Illinois QTIP elections subject to the federal disclaimer requirements of section 2518, it could have easily done so, just as it explicitly did by adopting the QTIP definition of section 2056(b)(7). See *id.* To the contrary, the Illinois General Assembly emphasized that the Illinois QTIP election was "separate and independent" from the federal QTIP election. *Id.* This separation and independence is exemplified by the fact that federal and Illinois laws on disclaimers are separate and distinct.

¶ 24    Here, Judy did not file the Disclaimer under federal law, but under Illinois law, namely section 2-7 of the Illinois Probate Act (755 ILCS 5/2-7 (West 2018)). Pursuant to that section, Judy disclaimed the offending Power in an instrument bearing her signature, describing the disclaimed Power, and declaring the Disclaimer and its extent. *Id.* § 2-7(b). The instrument was delivered to the trustees of the Trust and filed in the relevant probate court. *Id.* § 2-7(c). Judy was not barred from disclaiming by a judicial sale of her Power, a transfer or contract to transfer her Power, a written waiver of her right to disclaim, or an exercise of her Power. *Id.*

§ 2-7(e). The execution date of the Disclaimer is irrelevant because the Disclaimer is effective retroactively to the date of James's death, as if Judy predeceased James. *Id.* § 2-7(d)(1)(a).

¶ 25 The Attorney General directs our attention to the filing and payment instruction sheet appended to the Illinois estate tax return documents, which provides, *inter alia*, that "[t]he Illinois QTIP election will follow [f]ederal statutes and rules for treatment of such elected property as passing to the surviving spouse and inclusion for Illinois purposes on any Illinois Estate Tax Return of the surviving spouse." Based on this statement in the tax return instruction sheet, the Attorney General contends that "[u]nder those federal rules, the [Federal Code] allows for property interests to be disclaimed, but only as provided by section 2518." We disagree.

¶ 26 Notably, a tax return instruction sheet is not binding authority, nor does the Attorney General cite any binding authority to support its proposal to treat an Illinois QTIP election as a federal QTIP election by applying the time limitations of federal disclaimers under the Federal Code to Illinois disclaimers acting to effect Illinois QTIP elections that are explicitly "separate and independent" from federal QTIP elections. We decline the Attorney General's invitation to impose such an unprecedented application of the mandates of the federal disclaimer law upon Illinois QTIP elections, thereby superseding Illinois's own existing disclaimer law.

¶ 27 The Attorney General further contends that, as a practical matter, if taxpayers are allowed to wait until after an audit to disclaim a noncompliant QTIP power, there would be no incentive for taxpayers to draft compliant QTIP trusts but an incentive for "inadvertent mistakes" in estate planning to generate a windfall for taxpayers. Applied here, the Attorney General emphasizes that, had the offending Trust provision not been discovered via the audit, Judy would have been free to exercise the Power to transfer the QTIP property out of the Estate, perhaps avoiding Illinois estate tax at the time of her death or greatly complicating its collection.

¶ 28 At the outset, we observe that the Trust was compliant when it was drafted in 2007 and the Power established in the Family Trust was not an "inadvertent mistake" at that time. Rather, the Trust was a typical estate plan that was congruent with both federal and Illinois estate tax law when it was drafted. The same is true of many estate documents that were executed before changes in the law that caused the deviation between the federal and Illinois exemption amounts. Hence, the reason both federal and Illinois law allow disclaimers is to correct any latently discovered deficiencies in estate documents that were drafted under the former law and bring them into compliance with current law. That being said, we find no support for the Attorney General's arguments because Judy never exercised the lifetime Power to distribute the Family Trust before she disclaimed it. Moreover, under Illinois law, Judy would have been barred from disclaiming the Power if she had already exercised the Power. See 755 ILCS 5/2-7(e) (West 2018). A bar to the Disclaimer would have resulted in the Power remaining, thereby rendering the Illinois QTIP election unqualified and the Illinois estate tax not being deferred. Accordingly, no "windfall" was generated on Judy's behalf due to the offending Trust provision, statutory safeguards were in place to prevent any such "windfall," and the Attorney General's argument is without merit.

¶ 29 Affirming the validity of Judy's Disclaimer results in the Family Trust qualifying as QTIP and being eligible for the marital deduction, thereby deferring estate tax during Judy's lifetime. As noted by the defendants, this comports with James's intent when he executed the Trust in

2007, the laws in effect in 2007, and the laws in effect when James passed away in 2014. Making funds available for a surviving spouse to live on and estate tax being deferred during the lifetime of the surviving spouse is a long-standing public policy in Illinois. The legislative history relating to the Illinois QTIP legislation makes clear that maintaining this policy was at the heart of the amendment to allow Illinois QTIP elections. Comments in both the House and Senate proceedings indicate that the legislation would continue a 25-year practice in Illinois of deferring Illinois estate taxes until the death of the surviving spouse. See 96th Ill. Gen. Assem., House Proceedings, May 28, 2009, at 5 (statements of Representative Nekritz); see also 96th Ill. Gen. Assem., Senate Proceedings, June 24, 2009, at 9 (statements of Senator Harmon).

¶ 30     Finally, the Attorney General cites the Fourth District case of *Baillie v. Raoul*, 2019 IL App (4th) 180655, to support its argument that the disclaimer provisions of section 2-7 of the Illinois Probate Act do not operate to treat the offending Power in this case as if it never existed. In *Baillie*, the executor of the estate brought an action against the Attorney General under the State Officers and Employees Money Disposition Act (30 ILCS 230/1 to 6a (West 2014)), which allows taxpayers to pay taxes under protest then subsequently sue the Attorney General for a refund. *Baillie*, 2019 IL App (4th) 180655, ¶ 1. The dispute in *Baillie* involved how certain parcels of real estate should be valued, which, in turn, was contingent on the identity of the possessory interests in the real estate. *Id.* ¶¶ 2-3. The issue in *Baillie* had nothing to do with the timeliness of the execution of a disclaimer, as is the issue in the instant case. *Id.* ¶ 45. Rather, the issue there was whether the disclaimer made by the executor eliminated the identity of certain parcels of real estate as qualified joint interests that the executor held with her husband before his death. *Id.*

¶ 31     The executor in *Baillie* attempted to utilize section 2-7(d) of the Illinois Probate Act to disclaim her survivorship interests in the parcels and use the disclaimer to sever the joint tenancies after her husband's death. *Id.* ¶ 33. The *Baillie* court observed the established common law that "the only period of time when a joint tenancy can be severed" is before the other joint tenant dies. *Id.* ¶ 37. To that regard, a renouncing joint tenant may utilize section 2-7(d) of the Illinois Probate Act to disclaim and eliminate the joint tenancy, thereby creating a tenancy in common as to that tenant. *Id.* The *Baillie* court emphasized that " '[a]ny legislative intent to abrogate the common law must be clearly and plainly expressed.' " *Id.* (quoting *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2015 IL App (1st) 142804, ¶ 27). The court found that section 2-7(d) of the Illinois Probate Act did *not* express a clear intent to abrogate the common law rule that the severance of a joint tenancy can only happen before the death of the cotenant. *Id.* Accordingly, the *Baillie* court held that "[s]ection 2-7 is not a time machine" (*id.*) and "[d]isclaiming the survivorship interest after the decedent's death cannot change how the property was held until the decedent's death" (*id.* ¶ 50).

¶ 32     We find the holding in *Baillie* inapposite to the instant case because, here, the issue involves the applicability of federal disclaimer law to an Illinois QTIP election that is expressly "separate and independent" of a federal QTIP election. In *Baillie*, as noted, the issue was whether a disclaimer could be used to sever a present interest of a joint tenancy after the death of the other cotenant. *Id.* ¶ 45. The interest in this case is the Power, which, unlike the joint tenancy in *Baillie*, does not cease to exist upon the death of the decedent but, rather, is transferred to the surviving spouse upon the decedent's death. This is specifically contemplated by the disclaimer provisions of the Illinois Probate Act. See 755 ILCS 5/2-7(d)(1)(a) (West 2018). For these reasons, we refuse to apply the holding in *Baillie* to this case.

¶ 33    In conclusion, we find the Disclaimer was valid. Accordingly, the disclaimed Power was eliminated retroactively to James's death, thereby correcting the Trust to allow for and memorialize James's intent, which comports with the intent of Congress and the Illinois General Assembly to defer Illinois estate tax during the life of Judy as the surviving spouse. We are satisfied that this resolution is in harmony with the longstanding spirit of Illinois estate law. At the same time, we are mindful that the Attorney General will eventually collect the estate tax. That collection is simply deferred during Judy's lifetime.

¶ 34                                    CONCLUSION

¶ 35    For the foregoing reasons, we affirm the December 10, 2018, order of the circuit court of Williamson County.

¶ 36    Affirmed.