2022 IL App (3d) 210037

Opinion filed March 4, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| PROVIDENCE BANK AND TRUST COMPANY, Executor of the Estate of Willis R. Lagestee, | ) ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| | ) ) | Appeal No. 3-21-0037 Circuit No. 19-CH-1447 |
| v. | ) ) ) ) | |
| KWAME RAOUL, in His Official Capacity as Attorney General of the State of Illinois; and MICHAEL FRERICHS, in His Official Capacity as Treasurer of the State of Illinois, | ) ) ) ) ) ) | The Honorable John C. Anderson, Judge, presiding. |
| Defendants-Appellants. | ) | |

_____

JUSTICE DAUGHERITY delivered the judgment of the court, with opinion.
Justices McDade and Schmidt concurred in the judgment and opinion.

_____

**OPINION**

¶ 1    Plaintiff, Providence Bank and Trust Company, the executor of the estate of Willis R.

Lagestee, filed an action in the trial court against defendants, the Illinois Attorney General and

the Illinois State Treasurer (State Treasurer), to contest an Illinois estate tax deficiency that was

assessed by the Attorney General's office (AG's office) after an audit of the estate's Illinois estate tax return and paid by plaintiff under protest. The parties filed cross-motions for summary judgment on the issue of whether plaintiff could change its qualified terminable interest property (QTIP) election on an amended return that was filed after the extended due date for filing the original Illinois estate tax return had expired. Defendants also filed a motion to strike plaintiff's summary judgment affidavits. Following full briefing and a hearing on the matters, the trial court denied defendants' motion to strike, found that plaintiff's amendment of the estate tax return was proper and that no tax deficiency payment was owed by the estate, granted plaintiff's motion for summary judgment, and denied defendants' cross-motion for the same relief. Defendants appeal. We affirm the trial court's ruling.

## I. BACKGROUND

Plaintiff's decedent, Willis R. Lagestee (Lagestee), was a resident of Frankfort, Will County, Illinois. In September 2017, Lagestee died with an estate valued between $4 million and $5.49 million. At the time of Lagestee's death, the federal estate tax exemption was $5.49 million and the Illinois estate tax exemption was $4 million. See 26 U.S.C. § 1 *et seq.* (2012); 35 ILCS 405/2(b)(iii) (West 2016). Because the value of Lagestee's estate was under the federal threshold but over the Illinois threshold, Lagestee's estate was not required to pay federal estate taxes but was potentially required to pay Illinois estate taxes. The Illinois estate tax return for Lagestee's estate was initially due to be filed in June 2018, but plaintiff obtained a six-month extension. In December 2018, shortly before the extended due date expired, plaintiff filed the estate's original Illinois estate tax return.

In the original return, plaintiff made a QTIP election of $307,489 on behalf of the estate. The amount of the election served to reduce the taxable value of the estate to $4 million (the

amount of the Illinois estate tax exemption) and to defer any potential Illinois estate tax on the estate until after Lagestee's surviving spouse, Nancy, had passed away. In addition, although the worksheet that was attached to the return for taxable gifts that were to be included in the value of the estate showed a value of $849,240, that amount was not carried forward to the original return, and the attorney who prepared the return (the attorney for the estate at the time) mistakenly listed the amount of the taxable gifts as $0 on the original return. Several months later, when the AG's office audited the return, it found and corrected the mistake, assessed an Illinois estate tax deficiency of $263,062 (the initial tax deficiency plus accrued interest), and notified the attorney for the estate accordingly.

¶ 5        In October 2019, after receiving the deficiency notice, plaintiff paid under protest the full amount of the deficiency, including interest, and filed the instant action in the trial court, seeking a declaratory judgment that no deficiency was owed and an order requiring the State Treasurer to refund the protest payment plus interest to the estate. Plaintiff indicated in the complaint that it was going to file an amended Illinois estate tax return to correct the errors that were made in the original return. Attached to the complaint were numerous supporting documents, including the tax deficiency notice letter dated April 2019 that the AG's office had sent to the attorney for the estate, a letter from plaintiff to the State Treasurer dated October 2019 tendering payment of the protest amount, a payment form for the payment of the tax deficiency amount paid under protest, a copy of the payment check, and a copy of the original Illinois estate tax return that the attorney for the estate had filed. In addition, on plaintiff's motion and by agreement of the parties, the trial court entered an order preventing the State Treasurer from transferring the protest payment out of the State protest fund pending the final resolution of this case.

3

¶ 6        In November 2019, several months after the extended filing date for the original return

had expired, plaintiff filed the amended Illinois estate tax return for the estate. In the amended

tax return, plaintiff corrected the amount of taxable gifts and also corrected the amount of the

QTIP election to account for the change in the value of the taxable estate caused by the

correction of the taxable gift amount. As with the original return, the amended return used the

QTIP election to reduce the taxable value of the estate to $4 million (the amount of the Illinois

estate tax exemption) and to defer any potential Illinois estate tax on the estate until after

Lagestee's surviving spouse had passed away.

¶ 7        The following month, the AG's office sent a letter notifying plaintiff that the office had

rejected the estate's amended Illinois estate tax return. The AG's office indicated in the letter that

the QTIP amount could not be changed or modified after the extended filing date for the original

Illinois estate tax return had expired.

¶ 8        In February 2020 (leave to file was not granted until the following month), plaintiff filed

an amended complaint in the trial court in this case. The amended complaint was substantially

the same as the original complaint and contained the same or similar attached supporting

documents.

¶ 9        In July 2020, plaintiff filed a motion for summary judgment in the trial court. Plaintiff

asserted in the motion that the material facts were not in dispute and that it was entitled to

summary judgment because, under the applicable law, it was allowed to amend the Illinois estate

tax return to correct the mistakes that had been made, including the mistake that had been made

in the QTIP election. Plaintiff attached to the motion two supporting affidavits—one by Russell

Paarlberg, the attorney who had drafted Lagestee's trust and had prepared the original Illinois

estate tax return for the estate, and the other by Lagestee's surviving spouse, Nancy. In his

affidavit, Paarlberg stated, among other things, that it was Lagestee's intent with his trust to eliminate or minimize federal and state estate taxes, that Paarlberg had made a mistake in reporting the QTIP amount in the original Illinois estate tax return, that Paarlberg filed an amended Illinois estate tax return showing the correct amount of QTIP property in the estate, and that reporting the correct QTIP value reduced the amount of Illinois estate tax on Lagestee's estate to $0. In addition to those statements, Paarlberg's affidavit also set forth some of the general principles of law regarding estate taxation and the QTIP election and ended with the statement that "the matters and things set forth [in the affidavit were] true, in substance and in fact." Nancy's affidavit was much shorter than Paarlberg's. In her affidavit, Nancy attested that (1) as Lagestee's spouse, she had knowledge of his wishes for the disposition of his estate and the plan that he had created and executed with the advice and assistance of his attorney and (2) Lagestee's intention in executing his estate plan was to eliminate or minimize federal and state estate taxes. Nancy's affidavit ended with the same statement as Paarlberg's, that "the matters and things set forth [in the affidavit were] true, in substance and in fact."

¶ 10        A few months later, defendants filed a cross-motion for summary judgment. In the cross-motion, defendants asserted that the material facts were not in dispute and that they were entitled to summary judgment because under the applicable law, plaintiff could not amend or change the QTIP election after the extended due date for filing the original Illinois estate tax return had expired. Defendants attached to the cross-motion various supporting documents, including the affidavit of the AG's office employee who had audited the estate's original Illinois estate tax return and had determined that a tax deficiency existed, the original Illinois estate tax return that plaintiff had filed, the original federal estate tax return that plaintiff had prepared, the taxable gifts worksheet from the original return, the notice of deficiency letter that the AG's office had

5

sent to plaintiff, the amended Illinois estate tax return that plaintiff had filed, the amended federal estate tax return that plaintiff had prepared, and the notice letter that the AG's office had sent to plaintiff rejecting the amended return. In addition to the cross-motion for summary judgment, defendants also filed a motion to strike plaintiff's summary judgment affidavits, claiming that the affidavits contained irrelevant, improper, and conclusory information.

¶ 11       In December 2020, a hearing was held in the trial court on the cross-motions for summary judgment. Prior to the hearing, the parties had fully briefed the issues that were pending before the trial court. It is unclear from the record whether the attorneys presented oral arguments at the hearing, and no transcript from the hearing has been made part of the record on appeal. At the conclusion of the hearing, the trial court took the case under advisement. A few weeks later, the trial court issued a written ruling denying defendants' motion to strike plaintiff's summary judgment affidavits, finding that plaintiff's amendment of the estate tax return was proper and that no tax deficiency payment was owed by the estate, granting plaintiff's motion for summary judgment, and denying defendants' cross-motion for the same relief. The trial court ordered defendants to refund the protest amount that plaintiff had paid plus interest within 30 days. On motion of defendants, enforcement of the refund order was stayed, and defendants filed a notice of appeal.

¶ 12                                    II. ANALYSIS

¶ 13       On appeal, defendants argue that the trial court erred in (1) denying defendants' motion to strike plaintiff's summary judgment affidavits and (2) granting plaintiff's motion for summary judgment (and denying defendants' motion for the same relief). We address only the second issue because even if we assume that defendants' motion to strike should have been granted, it would not change our ruling on the summary-judgment issue. See *Barth v. Reagan*, 139 Ill. 2d

6

399, 419 (1990) (indicating that courts of review will not render advisory opinions or consider issues that will not affect the outcome of the case).

¶ 14      Turning to that issue then, defendants argue that the trial court erred in finding that plaintiff's amended Illinois estate tax return was proper and that no tax deficiency was owed, in granting plaintiff's motion for summary judgment on that basis, and in denying defendants' cross-motion for the same relief. In support of that argument, defendants make three primary assertions. First, defendants assert that under the clear and unambiguous plain language of the controlling law—section 2(b-1) of the Illinois Estate and Generation-Skipping Transfer Tax Act (Illinois Estate Tax Act) (35 ILCS 405/2(b-1) (West 2018)) and the incorporated federal provisions—plaintiff was not allowed to revoke or change its QTIP election since the extended date for filing the original Illinois estate tax return had expired, regardless of Lagestee's intent or the reason for the QTIP election. Second, and in the alternative, defendants assert that even if under some circumstances plaintiff was allowed to change its QTIP election by filing a supplemental or amended return after the filing date of the original return had expired, it could not do so in this case because the estate's value had not changed after the original return was filed, as was required under section 7 of the Illinois Estate Tax Act (35 ILCS 405/7 (West 2018)) for a supplemental or amended return to be permitted. On the contrary, defendants maintain, plaintiff in this case was impermissibly attempting to reclassify property as QTIP property in an amended return that plaintiff had not classified as QTIP property in the original return, even though the extended filing date for the original return had expired and the inventory and value of the property in the estate had not changed. Third and finally, defendants assert that in making its ruling, the trial court incorrectly believed that plaintiff was required to file an amended return and to make a full QTIP election and that relief was available to plaintiff under section

7

301.9100-3 of the federal Department of Treasury regulations (Treas. Reg. § 301.9100-3 (2020)), despite the law indicating to the contrary and the fact that plaintiff did not qualify for, or apply to receive, section 301.9100-3 relief. For all of the reasons stated, defendants ask that we reverse and vacate the trial court's final judgment order in all respects, including the trial court's grant of summary judgment for plaintiff, and that we grant summary judgment for defendants instead.

¶ 15　　　　Plaintiff argues that the trial court's ruling was proper and should be upheld. As to defendants' claim that the controlling law prohibited plaintiff from making a change to its QTIP election, plaintiff asserts that the tax provisions cited by defendants did not prevent plaintiff from filing an amended return to correct the mistakes that had been made in the original return, including the mistake in the QTIP election, even after the extended filing date for the original return had expired. In making that assertion, plaintiff distinguishes between a correction of a QTIP value and a revocation or modification of a QTIP value. Plaintiff maintains that in this case, despite defendants' claim to the contrary, plaintiff was not trying to revoke or modify its QTIP election in the amended return that it had filed but, rather, was merely trying to correct the mathematical errors that it had made in the taxable gift amount listed in the original return and in the corresponding QTIP value so as to reduce the estate's Illinois tax liability to $0 and defer the tax, as plaintiff was allowed to do under the law and exactly as plaintiff had done in the original return. With regard to defendants' claim in the alternative, plaintiff asserts that filing an amended return under section 7 of the Illinois Estate Tax Act was the appropriate and necessary action for plaintiff to take in this case to correct the mistakes that were made in the original return, including the mistake that was made in the amount of the QTIP election. According to plaintiff, it would be an absurd result to allow a taxpayer to file an amended return to correct the taxable value of an estate but to not allow the taxpayer to make corresponding corrections to related

values that were part of the same formula that was used to calculate the taxable value. As for defendants' claim that the trial court incorrectly believed that plaintiff was required to make a full QTIP election and that section 301.9100-3 relief was available to plaintiff, plaintiff asserts that the trial court was merely noting that plaintiff had to file an amended return to correct the original return—not that plaintiff was required to make a full QTIP election—and that the trial court correctly determined that section 301.9100-3 relief was available in this case. On the latter point, plaintiff suggests that defendants should not be able to pick and choose which federal regulations will apply here. As a final comment on this issue, plaintiff points out that an Illinois QTIP election is separate and apart from a federal QTIP election and that Illinois law does not restrict when a QTIP election can be finally determined or shown on an amended return. For all of the reasons set forth, plaintiff asks that we affirm the trial court's grant of summary judgment in plaintiff's favor.

¶ 16     The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions on file, and affidavits, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. See 735 ILCS 5/2-1005(c) (West 2020); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. *Id.* In appeals from summary judgment rulings, the standard of

review is *de novo*. *Id.* When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of summary judgment may be affirmed on any basis supported by the record. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 17        In conducting our review of the trial court's summary-judgment ruling in this case, we must consider the interaction, if any, between two sections of the Illinois Estate Tax Act, section 2(b-1), which contains the QTIP provision, and section 7, which contains the amendment provision. We must also be mindful of the federal tax code and certain sections of the federal Department of Treasury regulations to the extent that they apply to the issue raised here. As indicated above, an estate valued at over $4 million is generally required to pay Illinois estate taxes. See 35 ILCS 405/2(b)(iii) (West 2018). Under some circumstances, however, such an estate may reduce its taxable value below the Illinois estate taxation threshold ($4 million or less) by making a timely QTIP election. See, *e.g.*, *In re Estate of Dunston*, 2020 IL App (5th) 190017, ¶¶ 4-6 (describing how changes in the law created a gap between the federal and Illinois estate tax exemption amounts and how an Illinois QTIP election was needed so that the estate in that case could defer all estate taxes until after the surviving spouse had passed away). Specifically, section 2(b-1) of the Illinois Estate Tax Act allows the executor of an estate to take a marital deduction "for qualified terminable interest property under Section 2056(b)(7) of the Internal Revenue Code [26 U.S.C. § 2056(b)(7) (2018)]" and thereby reduce the taxable value of the estate for Illinois estate tax purposes. See 35 ILCS 405/2(b-1) (West 2018). An Illinois QTIP election is "separate and independent" from a federal QTIP election. *Id.* For an estate with a taxable value that falls between the Illinois and federal estate taxation thresholds (an estate with

10

a taxable value over $4 million but not over $5.49 million in 2017), such as Lagestee's estate in the instant case, making an Illinois QTIP election permits the executor to defer all or a portion of the Illinois estate taxes until after the surviving spouse has passed away, consistent with the public policy of Illinois and this country to provide for the financial needs of the surviving spouse. See *Dunston*, 2020 IL App (5th) 190017, ¶¶ 4, 29. The QTIP election must be made by the executor on the estate tax return and, once made, is irrevocable, provided that an election may be revoked or modified on a subsequent return filed on or before the due date of the original return, including any extensions actually granted. See 35 ILCS 405/2(b-1) (West 2018); 26 U.S.C. § 2056(b)(7)(B)(v) (2018); Treas. Reg. § 20.2056(b)-7(b)(4)(i), (ii) (2020). Section 2(b-1) does not specifically refer to corrections, supplementations, or amendments of an Illinois estate tax return and also does not refer to section 7 of the Illinois Estate Tax Act. See 35 ILCS 405/2(b-1) (West 2018).

¶ 18        Section 7 of the Illinois Estate Tax Act, on the other hand, requires an executor to file a supplemental or amended Illinois estate tax return if the state tax credit (the amount of the Illinois estate tax) is increased or reduced after the original Illinois estate tax return is filed. See *id.* § 7. Similar to section 2(b-1) of the Illinois Estate Tax Act, section 7 does not refer to QTIP elections and also does not refer to section 2(b-1). See *id.*

¶ 19        The final provision that we must potentially consider in ruling upon this issue is section 301.9100-3(a) of the federal Department of Treasury regulations, a section that was referred to and cited by the parties in their trial court arguments and in their briefs on appeal. Section 301.9100-3(a) allows the federal government to grant the taxpayer an extension of time to make a regulatory election where the taxpayer acted reasonably and in good faith and the grant of relief would not prejudice the interests of the government. Treas. Reg. § 301.9100-3(a) (2020). One

11

listed example of when a taxpayer acts reasonably and in good faith is when the taxpayer reasonably relies on the advice of a qualified tax professional. See *id.* § 301.9100-3(b)(1)(v).

¶ 20        In interpreting the applicable statutes in this case, we must also keep in mind the rules of statutory construction. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56. The most reliable indicator of that intent is the plain and ordinary meaning of the language of the statute itself. *Id.* In determining the plain meaning of statutory terms, a court should consider the statute in its entirety and keep in mind the subject the statute addresses and the apparent intent of the legislature in enacting the statute. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009); 5 ILCS 70/1.01 (West 2018) (in construing a statute, "[a]ll general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out"). The court should also try to give effect to the entire statutory scheme and construe all words and phrases in light of other relevant statutory provisions. See *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 410 (2009). The statute should be construed in such a manner as to render no word or phrase superfluous or meaningless. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). If the statutory language in question is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. *Gaffney*, 2012 IL 110012, ¶ 56. A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *Id.* However, if the language of a statute is ambiguous in that it is susceptible to more than one reasonable interpretation, a court may consider extrinsic aids to determine the meaning of the statutory language. See *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 51 (1990). As with a

12

trial court's grant of summary judgment, the standard of review on appeal for an issue of statutory construction is *de novo*. *Gaffney*, 2012 IL 110012, ¶ 50.

¶ 21     In addition to the general rules of statutory construction listed above, there are some more specific rules of statutory construction that apply to the interpretation of a tax statute or to an administrative agency's interpretation of a statute. First of all, statutes that impose a tax are to be strictly construed against the government and in favor of the taxpayer.[1] *Brooker v. Madigan*, 388 Ill. App. 3d 410, 416 (2009). Despite that strict-construction rule, however, in order to effectuate the legislature's intent, such statutes must still be given a reasonable construction, without bias or prejudice against either the state or the taxpayer. *Id.* Furthermore, when a court is construing a statute, it should generally give substantial weight and deference to an interpretation of that statute by the agency charged with the administration and enforcement of the statute, but only if the statute in question is ambiguous. See *Baillie v. Raoul*, 2019 IL App (4th) 180655, ¶ 46. If the statute in question is unambiguous, no deference to the agency's interpretation is warranted. See *id.* Ultimately, the court is not bound by the administrative agency's interpretation and may reject it if it is unreasonable or erroneous. *Senno v. Department of Healthcare & Family Services*, 2015 IL App (1st) 132837, ¶ 37; see also *Carroll v. Raoul*, 2020 IL App (3d) 180550,

---

[1] It has been recognized under Illinois law that taxation is the rule and exemption is the exception and that in determining the applicability of an exemption, all facts and debatable questions should be resolved in favor of taxation. *Horsehead Corp. v. Department of Revenue*, 2019 IL 124155, ¶ 33; see also *Carroll v. Raoul*, 2020 IL App (3d) 180550, ¶ 14 (stating that when a taxpayer seeks a credit or deduction under a tax statute, the statute should be strictly construed in favor of taxation). At least one court has indicated, however, that the broad federal rule of deductibility for interspousal transfers (the marital deduction) is the general rule, which implements the will of Congress and the public policy favoring deferral of estate taxes until after the surviving spouse's death; that the non-deductibility of terminal interests is the exception to that general rule; that the federal QTIP provision is an exception to that exception; and that as such, the federal QTIP provision should be given the same favored position and liberal construction that is given to the marital deduction. *Estate of Clayton v. Commissioner of Internal Revenue*, 976 F.2d 1486, 1498 (5th Cir. 1992).

13

¶ 22 (noting that an agency's erroneous interpretation of a statute does not preclude a court from properly enforcing the terms of that statute).

¶ 22    In the present case, when we consider the applicable provisions of the tax codes, the federal regulations, and the rules of statutory construction, we find that the two Illinois statutes at issue (section 2(b-1) and section 7 of the Illinois Estate Tax Act) are clear and unambiguous and must be enforced as written. See *id.* ¶ 56. Section 2(b-1) of the Illinois Estate Tax Act allows the plaintiff in this case, as the executor of Lagestee's estate, to make a QTIP election on the estate's Illinois estate tax return to reduce the taxable value of the estate to an amount equal to or under the Illinois estate taxation threshold. 35 ILCS 405/2(b-1) (West 2018). Plaintiff did so here. Plaintiff filed the original Illinois estate tax return and made a timely QTIP election on that return, which reduced the value of Lagestee's taxable estate to $4 million and deferred any potential Illinois estate tax. Without even considering the summary judgment affidavits that plaintiff filed, the intent of plaintiff's QTIP election was clear—to eliminate or defer any current Illinois estate taxes that would have otherwise been due. After plaintiff had filed the original return and the extended filing date had expired, the QTIP election was irrevocable and plaintiff was generally prohibited from trying to revoke or change the QTIP election. See 35 ILCS 405/2(b-1) (West 2018); 26 U.S.C. § 2056(b)(7)(B)(v) (2018); Treas. Reg. § 20.2056(b)-7(b)(4)(i), (ii) (2020). However, once the AG's office audited the return, found and corrected the mistakes, and notified plaintiff of the change in the amount of Illinois estate tax due, plaintiff was required under section 7 of the Illinois Estate Tax Act to file an amended return to correct the mistakes that had been made, including the mistake in the QTIP election, if plaintiff was not going to merely accept the changes that the AG's office had made to the original return. See 35 ILCS 405/7 (West 2018). We believe, therefore, that section 7 of the Illinois Estate Tax Act

14

would allow for the filing of an amended Illinois estate tax return to correct an error in the original return, even if that error related to the amount of a QTIP election. See *id.* To rule otherwise would lead to an absurd result where a taxpayer would be prevented from correcting an obvious mistake. Our ruling here avoids that absurd result and attempts to give effect to both section 2(b-1) and section 7 of the Illinois Estate Tax Act. See *Stern*, 233 Ill. 2d at 410 (noting that when a court interprets a statutory provision, it should try to give effect to the entire statutory scheme and construe all words and phrases in light of other relevant statutory provisions); *Du Page County Election Comm'n v. State Board of Elections*, 345 Ill. App. 3d 200, 208 (2003) (indicating that when a court construes a statute, it should avoid interpretations that will lead to absurd results); *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311-12 (2001) (recognizing that when two statutes are alleged to be in conflict, a court has a duty to interpret those statutes, if reasonably possible, in a manner that avoids an inconsistency and gives effect to both statutes). In this particular case, plaintiff properly corrected the mistake that the AG's office had discovered and then properly corrected the corresponding QTIP amount to again reduce the taxable value of Lagestee's estate to $4 million and defer any potential Illinois estate tax.

¶ 23 We thus conclude that the trial court correctly found that plaintiff's amended Illinois estate tax return was proper and that plaintiff owed no tax deficiency in this case. The trial court, therefore, appropriately granted plaintiff's motion for summary judgment and denied defendants' cross-motion for the same relief.

¶ 24                                    III. CONCLUSION

¶ 25 For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 26 Affirmed.

| | |
|---|---|
| **Cite as:** | *Providence Bank & Trust Co. v. Raoul*, 2022 IL App (3d) 210037 |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 19-CH-1447; the Hon. John C. Anderson, Judge, presiding. |
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and David E. Neumeister, Assistant Attorney General, of counsel), for appellants. |
| **Attorneys for Appellee:** | Gregory E. Moredock, of Sorling Northrup, of Springfield, for appellee. |